UNITED STATES FIDELITY AND GUARANTY
COMPANY *v.* NATIONAL PAVING AND
CONTRACTING COMPANY

[No. 172, September Term, 1961.]

42

*Decided March 13, 1962.*

The cause was argued before BRUNE, C. J., and HAM-MOND, HORNEY, MARBURY and SYBERT, JJ.

*G. C. A. Anderson,* with whom were *J. Kemp Bartlett, Jr., Anderson, Barnes, Coe & King* and *Bartlett, Poe & Claggett* on the brief, for the appellant.

*Charles C. G. Evans* and *Mathias J. DeVito,* with whom were *Piper & Marbury* on the brief, for the appellee.

44

SYBERT, J., delivered the opinion of the Court.

This appeal presents the question whether an insurer properly denied coverage under its policy and refused to defend its insured who was sued for personal injuries in a motor vehicle collision case.

The insured, National Paving and Contracting Company (plaintiff below and appellee here), is in the business of manufacturing asphalt paving material and of paving streets and roadways for public and private customers. At the time of the accident, National operated extensive equipment of its own, including dump trucks. However, since its supply of dump trucks was inadequate during its busy season, it was National's custom to hire, under an annual oral contract, additional dump trucks and drivers from Elizabeth May Sudbrook, a hauling contractor, whose business was managed by her son Redmond. On July 25, 1955, a Sudbrook dump truck, operated by a Sudbrook driver, Lloyd Ogle, and hired by National that day for its purposes, crossed over to the left of the center of Pimlico Road and crashed into a Baltimore Transit Company bus, seriously injuring its driver, Ernest H. Keitz. In the suit which resulted, Keitz named as defendants Ogle, Elizabeth May Sudbrook, Redmond Sudbrook and National.

At the time National had two contracts of liability insurance with the appellant, United States Fidelity and Guaranty Company (U.S.F. & G.), defendant below, a schedule liability policy, with limits of $100,000 for each person and $300,000 for each accident, and an automobile liability and physical damage policy, with non-ownership endorsement and with the same limits. Sudbrook had an automobile liability policy with another insurance company with limits of $20,000 and $40,000. When notice of the damage suit was served on Dr. Ward, the president of National, he notified U.S.F. & G. through its agent, Carl F. Gail. Mr. Gail had previously advised National with respect to its liability coverage and had issued the policies in question to it on behalf of U.S.F. & G. Mr. Gail requested that the suit papers be sent to him, which was done. An adjuster of U.S.F. & G. then called on Dr. Ward and requested and received a written statement as to the relationship

that existed between National and Sudbrook. Soon after, the adjuster of U.S.F. & G. returned the suit papers with a letter which stated in part:

> "The case against you as set forth in the allegations of the Declaration does not fall within the coverage of the insurance policies you have with our company and we therefore are not in a position to defend you in this action."

Despite vigorous exception by Gail, U.S.F. & G.'s own agent, to this denial of coverage, National was obliged to engage other legal counsel to represent it in the damage suit. At the trial a verdict was directed in favor of National at the conclusion of the plaintiff's case on the ground that there was no legally sufficient evidence upon which the jury could determine that Ogle, the driver, was National's servant when the collision occurred. A directed verdict was also granted in favor of Redmond Sudbrook and the jury returned a verdict for Keitz for $70,000 against Ogle and Elizabeth May Sudbrook. An appeal was taken from all three judgments by Keitz for the principal purpose of disputing the trial court's directed verdict in favor of National.

This Court in *Keitz v. National Paving Co.,* 214 Md. 479, 134 A. 2d 296 (1957), reversed the judgment on directed verdict for National, holding that there was legally sufficient evidence in the case to require the submission to the jury of the question whether or not Ogle was a servant of National at the time of the accident, and stating in effect that even though Ogle was Sudbrook's servant when the accident occurred, a servant can have two masters, not joint employers, at one time as to one act, provided that the service to one does not involve abandonment of the service to the other (pp. 491 and 493 of 214 Md.). The Court, after a reargument, further held that the judgment against Ogle and Sudbrook was binding upon National as to the issues of Ogle's negligence and the amount of damages. The case was therefore remanded for a new trial on the sole issue of whether Ogle was a servant of National at the time of the accident. (214 Md. 496, 136 A. 2d 229 (1957).)

After the decision in *Keitz,* Sudbrook's insurance company paid to Keitz $20,000, representing the limit of its liability under its policy. This reduced National's possible liability on the retrial to $50,000. Attorneys for National, after consulting among themselves and with outside counsel, convinced National that a compromise settlement would be the safer course of action rather than risking a retrial on the issue of the agency relationship between National and Ogle (with respect to which National felt it was not in a position to controvert the plaintiff's evidence), and thus possibly becoming liable for the whole sum of $50,000. After giving notice to U.S.F. & G. of the proposed compromise and an opportunity to participate (which resulted in no reply), a settlement was consummated by National with Keitz for $37,500. National then sued U.S.F. & G. under the two aforementioned policies of casualty insurance for damages claimed because of denial of coverage by U.S.F. & G. and failure to defend Keitz's suit against it. Its claim of coverage under the automobile liability and physical damage policy, however, was abandoned at the trial and its case was based on certain relevant provisions of the schedule liability policy. The trial court, Judge Oppenheimer presiding without a jury, found in favor of National. Without finding it necessary to decide the question of whether or not Ogle was a servant of National, the trial court held that hazard Division 5, the "independent contractors" provision of the schedule liability policy, covered National's potential liability arising out of the accident, and that U.S.F. & G. had breached its contract of insurance by its refusal to defend National in the Keitz suit. Judgment was entered for National in the amount of $50,316.48, which included the settlement figure paid to Keitz by National, with interest, plus National's attorneys' fees and incidental expenses incurred in defending the Keitz suit. U.S.F. & G. appealed from this judgment.

I

U.S.F. & G. maintains that in the absence of a finding of fact that Ogle was the servant of National at the time of the accident there could be no finding that National was liable for

damages as a result of the accident, and hence no liability could be imposed on its insurer. This contention is predicated on the theory that in the *Keitz* case this Court based the potential liability of National upon the sole issue of whether Ogle was a servant of National at the time of the accident. Appellant urges that until that question is decided, liability of National and any consequent liability of U.S.F. & G. cannot be determined.

The contention is not sustainable. It is true, of course, that this Court in the *Keitz* case considered the question of National's possible liability to Keitz under the doctrine of *respondeat superior* on the basis of a potential master-servant relationship existing between Ogle, as the driver of the truck, and National. In that case this Court did not have before it the contract of insurance defining the conditions under which U.S.F. & G. would be liable to National and this Court's decision in the *Keitz* case can in no way limit U.S.F. & G.'s liability *if* the insurance policy it issued to National creates a liability on its part even in the absence of a judicial determination of whether Ogle was or was not the servant of National at the time of the accident. Thus the fundamental question in *this case* is not the basis of the legal liability of National to Keitz, but rather what coverage was afforded to National under the terms of the contract issued by U.S.F. & G.

## II

Appellant relies upon one of the terms of the contract to show its freedom from liability. It cites the following key provision:

> "I. Coverage A—Bodily Injury Liability—To pay on behalf of the Insured all sums which the Insured shall become *legally obligated to pay* as damages because of bodily injury * * *." (Italics added.)

Appellant argues that the italicized words require a judicial determination of National's obligation to pay a claim as a condition precedent before liability can attach to U.S.F. & G.; that, since National's settlement with Keitz was voluntary,

National was not legally obligated to make the payment and thus U.S.F. & G. is not bound to reimburse it.

Appellant also points to Condition 9 of the policy, which provides:

> "No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined *either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.*" (Emphasis supplied.)

It is conceded that there was no judicial determination of National's liability, nor did U.S.F. & G. agree to a settlement. (No question has been raised here, however, as to the reasonableness of the amount of the settlement, and, without admitting liability, appellant stipulated as to the reasonableness of the counsel fee allowed.)

As pointed out in our recital of the facts, the insurance company was notified of the proposed settlement negotiations but declined by its silence to participate. If it can be shown that the claim and potential liability faced by National was within the coverage of the schedule liability policy and if it is clear that National acted in good faith and with due care and prudence in settling the suit which U.S.F. & G. had an obligation to defend (which are two basic questions answered hereinafter), then appellant's contention is without force.

It is settled law that where there is a denial of liability and a refusal to defend on the part of the insurer under the conditions described above, the insured is no longer bound by a provision of a policy prohibiting settlement of claims without the insurer's consent, or a provision making the insurer's liability dependent on the obtaining of a judgment against the insured. The insured under such circumstances may make a reasonable compromise of the suit without losing his right to recover from the insurer under the policy. The majority of jurisdictions have so held, the cases being collected in an annotation, 49 A.L.R. 2d 694, 744 et seq. See, for example,

*Neighbours v. Harleysville Mutual Casualty Co.*, 169 F. Supp. 368 (D. C. Md. 1959) ; *Peterson v. Allstate Insurance Company*, 330 P. 2d 843 (Calif. 1958) ; *Massachusetts Bonding & Ins. Co. v. Car & Gen. Ins. Corp.*, 152 F. Supp. 477 (D. C. E. D. Penn. 1957) ; *Cardinal v. State*, 107 N. E. 2d 569 (N. Y. 1952). See also 7A *Appleman, Insurance Law and Practice*, § 4690. Cf. *Anderson v. Md. Casualty Co.*, 123 Md. 67, 90 Atl. 780 (1914). Such refusal to defend by the insurer has been held to constitute a waiver of similar restrictive provisions against the insured. *L. J. Dowell, Inc. v. United Pacific Casualty Ins. Co.*, 72 P. 2d 296 (Wash. 1937) ; *Collier v. Union Indemnity Co.*, 31 P. 2d 697 (N. M. 1934) ; 45 C. J. S., *Insurance*, § 937 b.

As we shall now proceed to point out, we feel that the claim of Keitz against National did come within the terms of the schedule liability policy; that U.S.F. & G. therefore had a duty to defend; that when it refused and National proceeded with reasonable prudence to settle the claim after notifying U.S.F. & G., the latter could no longer rely on provisions in the contract precluding a settlement without its consent or requiring a judgment against the insured.

### III

The relevant provision of the schedule liability policy which, in the trial court's view, provided coverage for the potential liability to which National was exposed in the Keitz suit reads as follows:

> "I. Coverage A—Bodily Injury Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the hazards hereinafter defined.
>
> * * *
>
> "Definition of Hazards
>
> Division 5. Independent Contractors. Operations performed by independent contractors, and omissions or supervisory acts of the Insured in connection with work performed for the Named Insured by independent contractors * * *."

U.S.F. & G. contends that this section of the contract did not insure National in the Keitz case, and bases its argument partly on policy considerations. It relates the origin of clauses of this nature to show that the essential purpose of such a provision was to cover the liability of a contractor for the negligent performance of a statutory obligation or non-delegable duty by an independent contractor. It cites no authority to support this theory. We can give little weight to such a contention, but must turn to the language of the policy itself to determine the coverage. *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 613, 155 A. 2d 484 (1959).

With respect to the language of the policy, appellant argues that if, as the trial court assumed, Ogle, the driver, could be a servant of National at the time of the accident, then it would seem to follow that Sudbrook, his employer, could not have been an independent contractor under Division 5 of the insurance policy. Hence, it maintains, National's liability is predicated solely on the negligence of Ogle as its own servant, and not on an act of Sudbrook as an independent contractor, and as such is not covered by the policy. The "legal obligation" of National, for which U.S.F. & G. could be held under the policy, could only arise, according to appellant, out of the operations of its independent contractor, Sudbrook, it being the legal obligation, and not the injury, arising out of the defined hazards (Division 5) which is covered by the policy. Appellant again cites no authority to bolster this conclusion.

The interpretation contended for is a narrow one for which we find little support, either in the language of the contract itself or in the decisions. It is settled law that insurance contracts must be interpreted, like other contracts, according to the sense and meaning of the terms, *Life Insurance Co. v. Plummer,* 181 Md. 140, 142, 28 A. 2d 856 (1942), and if any ambiguity exists it will be resolved against the drafter of the policy—in this case, U.S.F. & G., *Penn, etc. Ins. Co. v. Shirer,* 224 Md. 530, 536, 168 A. 2d 525 (1961).

The coverage clause in question states concisely that the insurer will "pay on behalf of the Insured all sums which the

Insured shall become legally obligated to pay *as damages because of bodily injury* \* \* \* sustained by any person, caused by accident and *arising out of the hazards hereinafter defined."* (Emphasis supplied.) Division 5, quoted above, provides coverage for operations performed by an independent contractor.

The trial court rejected the narrow interpretation sought by appellant and held that the words in the coverage provision "caused by accident and arising out of the hazards hereinafter defined" referred to the injury and not to the legal liability of the insured — that is, that it is the injury (and not the "legal obligation") which must have been caused by accident and which must have arisen out of the operation of the independent contractor. We agree. Even if there had been a finding that Ogle was the servant of National, Division 5 by its language does not limit coverage only to situations where the independent contractor is the sole cause of the injury, and the fact that this Court in the *Keitz* case saw a potential master-servant relationship between National and Ogle did not affect the independent contractor relationship of Sudbrook to National, the existence of which both parties concede. Cf. *Greer Lines Co. v. Roberts,* 216 Md. 69, 82, 139 A. 2d 235 (1958); *Hood v. Azrael,* 167 Md. 641, 644, 175 Atl. 666 (1934).

If under Division 5 the injuries sustained by Keitz arose out of the operations of Sudbrook, the independent contractor, then appellant is liable to the insured under the coverage provided by that clause. We think the injuries did so arise and that the case law available on the question supports that conclusion.

A Fourth Circuit case, *Duke Power Co. v. Indemnity Insurance Co.,* 229 F. 2d 588 (4th Cir. 1956), presents a situation similar to the one before us. Duke employed an independent contractor, Combustion Engineering Co., to furnish and install two steam generators in Duke's power plant. The contract provided that Combustion should furnish protective public liability insurance for Duke's benefit until the work was completed. The policy which Combustion obtained from Indemnity had a clause which was essentially identical to Division 5 of the contract before us. In order to remove an ob-

struction which was holding up Combustion's work, Duke's foreman requested and received permission from Combustion's foreman to use a hoist belonging to Combustion and run by one of Combustion's regular operators. During the removal of the obstruction by the hoist operator, participated in by two of Duke's workers and directed by Duke's foreman, a cable was negligently allowed to come into contact with a pipe which fell upon Combustion's superintendent, causing his death. Suit was filed against Duke for wrongful death by the administrator of the estate of the superintendent. When the insurance company refused to defend Duke after being notified of the accident and suit, the claim was compromised by Duke. As here, there was no dispute over the reasonableness of the amount paid in settlement, and in Duke's subsequent suit against the insurer, the only question was whether Duke's insurance contract afforded coverage for its liability for the wrongful death. The provision relied on by Duke was the "independent contractor" clause. The insurance company contended, as does U.S.F. & G. in this case, that the provision was a specialized one and very narrow in scope. In an opinion by Judge Soper, the United States Court of Appeals disagreed with this construction and reversed the judgment of the District Court in favor of the insurance company. The decision was based on two independent grounds. One was that the superintendent's death resulted from a supervisory act of the insured (Duke) in connection with the work. The other ground, applicable here, was that the removal of the obstruction fell within the "operations performed for the insured by independent contractors" clause. Thus the finding was that, even though Combustion had volunteered its services in the episode involved, the accident arose out of the operation of the independent contractor and hence Duke's legal liability for the accident was covered by the policy.

There are obvious similarities between the *Duke* case and the case at bar. The provision of the contract relied on is essentially the same in both cases; the cases both involve independent contractors who supplied not only equipment but also their own operators; both cases involve performance by

an employee of the independent contractor under the joint direction of his own employer and the principal (Duke there, National here); the accident in both cases was directly related to the operations which the independent contractor was performing for the insured. The conclusion reached in the *Duke* case is more compelling under the circumstances presented by the instant case in view of the fact that Duke's foreman had almost exclusive control over the employee of the independent contractor, after his foreman had directed him to aid in removing the obstruction. In the instant case National did not exercise a like exclusive control over the manner in which Sudbrook's men performed their duties—their manner of performance was determined by rules set up by Sudbrook. Furthermore, the operations out of which the accident in this case arose were part of the normal work which the independent contractor was to perform for National.

For other cases coming to a like conclusion under similar circumstances, see *Standard Oil Co. v. Fidelity & Casualty Co.*, 66 F. Supp. 603 (D. C. W. D. Ky., 1946), aff'd, 162 F. 2d 715 (6th Cir. 1947); *Liberty Mutual Ins. Co. v. Standard Accident Ins. Co.*, 164 F. Supp. 261 (D. C. S. D. N. Y. 1958), aff'd, 264 F. 2d 671 (2nd Cir. 1959); *General Acc. F. & L. Assur. Corp. v. Continental Cas. Co.*, 287 F. 2d 464 (9th Cir. 1961).

Our views are in accord with the decisions cited. We think the provision of the insurance policy in question here does not contain language which either expressly or by implication restricts coverage to situations where the independent contractor is the sole cause of the injury or where a contractor is sued for negligent performance of a non-delegable duty by the independent contractor. To reach such a conclusion it would be necessary to read in such words as "accidents caused exclusively by operations performed by independent contractors". We see no justification for reading such meaning into this contract. If, as appellant contends, a failure to so interpret the contract will result in converting schedule liability policies into fleet truck policies, his remedy for such a result is not a judicial one but rather a matter of redrafting by the insurance company itself. A simple exclusionary pro-

54

vision would have provided the company with the desired result. We hold that the policy, as written, covered the liability to which National was exposed in this case.

IV

Appellant's final contention is that it was not obligated to defend National, on the ground that the allegations set forth in the Keitz suit against National did not describe a claim within the coverage of any policy issued by U.S.F. & G. to National. It cites an extensive annotation in 49 A.L.R. 2d 694 to the effect that where the allegations in a suit against the insured do not bring the claim within the policy coverage, the refusal of the insurer to defend is justified and such refusal does not constitute a breach of contract nor does the insurer incur any legal liability.

While the general rule as stated by appellant is a correct one it is not without qualification. In an annotation in 50 A.L.R. 2d 458, 504, it is stated:

> "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially,* a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, *such doubt will be resolved in insured's favor.*" (Emphasis added.)

See also *Kirkpatrick v. Consolidated Underwriters,* 227 F. 2d 228 (4th Cir. 1955); *Employers Mut. Liability Ins. Co. of Wis. v. Hendrix,* 199 F. 2d 53 (4th Cir. 1952); *Lee v. Aetna Casualty & Surety Co.,* 178 F. 2d 750 (2nd Cir. 1949); *Keats v. Moss,* 161 N. Y. S. 2d 353 (1957).

While it is true that the declaration in the *Keitz* case did not allege every fact necessary to establish National's coverage, we think there was enough to indicate a potentiality that, under the allegations actually made, the injury in question was

caused by some act or omission covered by the terms of the contract. The declaration alleged that the accident resulted from the negligence of the driver Ogle, and that Ogle was the "agent, servant and employee" of both Sudbrook and National. This was sufficient to put U.S.F. & G. on notice that, if Sudbrook were held liable, there was potential coverage under the policy if in fact the relationship of Sudbrook to National was that of an independent contractor. That there was some doubt as to this relationship is apparent from the fact that U.S.F. & G. requested a written statement from National setting forth in detail its relationship to Sudbrook, and also that U.S.F. & G.'s own agent who had issued the policy was under the impression that coverage existed. If there was any doubt as to this relationship, it should have been resolved in National's favor by appellant. We do not feel that under the circumstances of this case appellant was relieved of its duty to defend.

In view of our disposition of the case, it is unnecessary to consider National's contention that U.S.F. & G. was estopped to deny coverage by the representations of its agent Gail.

> *Judgment affirmed; costs to be paid by appellant.*