651 A.2d 859

AETNA CASUALTY & SURETY COMPANY

v.

Robert COCHRAN.

No. 41, Sept. Term, 1994.

Court of Appeals of Maryland.

Jan. 12, 1995.

**100**

John B. Kaiser (Kevin J. McCarthy, McCarthy, Bacon & Costello, on brief), Lanham, for petitioner.

William S. Barton (Karen L. Smith, Urner, Nairn, Barton & Williams, on brief), Hagerstown, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

This appeal arises out of an action filed by Robert Cochran (Cochran) against Aetna Casualty & Surety Company (Aetna) seeking a declaration that Aetna had a duty to defend Cochran in a tort action filed against him. That tort action was instituted by Victoria and Robert Beyer in the Circuit Court for Washington County (the *Beyer* action). The Beyers filed a complaint against Cochran alleging assault, battery and loss of consortium stemming from an altercation which occurred at the offices of J. Edward Cochran and Company, Inc. (J. Edward Cochran). At the time of the alleged incident, J. Edward Cochran held two liability insurance policies issued by Aetna.[1] As an officer, employee, stockholder and director of J. Edward Cochran, Cochran was covered under those insurance policies. Upon receiving the *Beyer* complaint, Cochran wrote Aetna to notify it of the complaint and to request that

---

1. The language in each policy relevant to the issues in the instant case is identical.

Aetna provide him with representation in the *Beyer* action. In that letter, Cochran informed Aetna that Victoria Beyer interjected herself into an altercation between himself and his brother, Edward W. Cochran, Jr. At a March 19, 1990 meeting with representatives of Aetna, Cochran explained that any injuries sustained by Victoria Beyer occurred while Cochran was defending himself against an assault by his brother.[2] After receiving Cochran's letter, Aetna advised Cochran that it was reserving its right to disclaim coverage. In a subsequent letter, Aetna refused to defend Cochran in the *Beyer* action based on an exclusion in the insurance policies. That exclusion provided:

"This insurance does not apply to:

a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.' This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

After Aetna refused to defend Cochran in the *Beyer* action, Cochran hired private counsel for his defense. Subsequently, Cochran filed a complaint against Aetna in the Circuit Court for Allegany County seeking a declaratory judgment that Aetna had a duty to defend Cochran in the *Beyer* action and that Aetna be required to pay the attorney's fees incurred in connection with the declaratory judgment action. Cochran argued that there was a potentiality that the alleged intentional torts in the *Beyer* action were covered under the insurance policies and thus, Aetna had a duty to defend him in that action.

Aetna filed a motion for summary judgment contending that it properly refused to defend Cochran because the alleged assault and battery are intended acts which are specifically excluded from coverage under the insurance policies. Cochran then filed a cross motion for partial summary judgment

---

**2.** Cochran also stated that he plead self-defense in his answer to the *Beyer* complaint. Although that answer is not contained in the record, counsel for Aetna acknowledged at oral argument that Cochran may have plead self-defense in his answer to the *Beyer* complaint.

reiterating his position that because "the Aetna policies expressly cover[ ] injuries that might be intended or expected from the standpoint of the insured if they result from the use of reasonable force to protect persons or property," the allegations in the *Beyer* action establish a potentiality of coverage under the insurance policies. Subsequent to a hearing on the motions for summary judgment, the circuit court, (Sharer, J.), issued a memorandum and order granting Aetna's motion for summary judgment and denying Cochran's cross motion for partial summary judgment. The circuit court held that Aetna had no duty to defend Cochran in the *Beyer* action because "the claim is not covered by the Aetna [policies], nor is there a potentiality of coverage" under those policies. Cochran appealed the circuit court's judgment to the Court of Special Appeals which reversed the circuit court and held that a " 'potentiality of coverage' existed on the face of the *Beyer* complaint" and Aetna had a duty to defend Cochran in that action. *Cochran v. Aetna Casualty*, 99 Md.App. 350, 362, 637 A.2d 509, 514 (1994). We granted certiorari to consider whether Aetna has a duty to defend Cochran in the *Beyer* action. 335 Md. 341, 643 A.2d 441.

I.

In *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), this Court held that an insurance company has a duty to defend its insured for all claims which are potentially covered under an insurance policy. In *Brohawn* we stated:

> "The obligation of an insurer to defend its insured under a contract provision . . . is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy."

276 Md. at 407–08, 347 A.2d at 850 (citations omitted) (emphasis in original).

In *Brohawn*, suit was instituted against Mary Brohawn alleging assault or, in the alternative, negligence as a result of a physical altercation between Brohawn and two nursing home employees. Prior to the institution of the tort suit, Brohawn had pled guilty to criminal assault as a result of the same altercation. After Brohawn notified her insurance company of the tort suit, the insurance company filed a declaratory judgment action seeking a ruling that it had no duty to defend Brohawn. In the declaratory judgment action, the insurance company argued that Brohawn's guilty plea to criminal assault established that she committed an intentional tort which was specifically excluded from coverage under her insurance policy. In holding that the insurer could not obtain a declaratory judgment that it did not have a duty to defend based on the evidence of the guilty plea, we noted that while the insurer "may believe that the evidence of the guilty plea would establish that any injuries sustained ... were the result of intentional acts by Mrs. Brohawn, this belief will not relieve [the insurer] of its duty to defend its insured in suits which allege an unintentional tort covered by the policy." *Brohawn*, 276 Md. at 408, 347 A.2d at 850. Thus, because the allegations in the tort complaint established a potentiality of coverage under Brohawn's insurance policy, the insurer had a duty to defend and could not escape that duty by obtaining a declaratory judgment based on extrinsic evidence that Brohawn's actions were not covered under the insurance policy.

To ascertain when an insurer is under a duty to defend an insured in accordance with *Brohawn*, this Court, in *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981), articulated the following two-part inquiry:

"In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the

policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit." 292 Md. at 193, 438 A.2d at 285. To answer these two inquiries as they pertain to the facts of the instant case, we must ascertain the scope and limitations of coverage under the Aetna insurance policies and then determine whether the allegations in the *Beyer* action would potentially be covered under those policies.

In answering the first *Pryseski* inquiry, we focus on the terms of the insurance policies themselves to determine the scope and limitations of their coverage. *See Mitchell v. Maryland Casualty,* 324 Md. 44, 56, 595 A.2d 469, 475 (1991); *Mut. Fire, Marine & Inland Ins. v. Vollmer,* 306 Md. 243, 250, 508 A.2d 130, 133 (1986). In construing the terms of the insurance contract, we must accord the terms their "customary, ordinary, and accepted meaning." *Mitchell,* 324 Md. at 56, 595 A.2d at 475; *Cheney v. Bell National Life,* 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989). In *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.,* 302 Md. 383, 488 A.2d 486 (1985), this Court stated that:

> "An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract ... we construe the instrument as a whole ... [and] should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution."

302 Md. at 388, 488 A.2d at 488 (citations omitted).

When we apply the terms of the insurance policies at issue in the instant case and accord those terms their "ordinary and accepted meaning," the pertinent language of those insurance policies is clear. The policies exclude from coverage bodily injury or property damage resulting from "intended" or "expected" acts. The policies state, however, that the "exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." The excep-

tion to the exclusion must be construed to limit the applicability of the policies' exclusion for intended or expected acts. Thus, the insurance policies exclude from coverage bodily injury or property damage which was intended or expected from the standpoint of the insured, while the insurance policies provide coverage for bodily injury resulting from the use of reasonable force to protect persons or property *even if that bodily injury was expected or intended from the standpoint of the insured.*

Having established the scope and limitations of coverage available under the Aetna insurance policies, the second part of the *Pryseski* inquiry requires us to determine whether the allegations in the *Beyer* action potentially bring that action within the policies' coverage. The *Beyer* complaint contains three separate counts against Cochran alleging the intentional torts of assault and battery and loss of consortium due to the alleged assault and battery. The allegations in the complaint contain no averments or intimations that Beyer's bodily injury resulted from Cochran's use of reasonable force to protect himself, which would potentially bring the alleged intentional acts under the policies' coverage. In fact, the issue of self-defense was not advanced until Cochran informed Aetna of his defense. Thus, the allegations in the complaint filed in the *Beyer* action do not indicate coverage under the insurance policies.

## II.

Although the allegations in the complaint filed in the *Beyer* action do not indicate coverage under the Aetna insurance policies, that does not end our inquiry. We must determine whether *Brohawn* permits Cochran to establish a potentiality of coverage by looking beyond the plaintiff's complaint in the *Beyer* action. In arguing that extrinsic information cannot be utilized to establish a potentiality of coverage under an insurance policy, Aetna relies heavily on the Court of Special Appeals' decision in *Eastern Shore Financial v. Donegal Mut.*, 84 Md.App. 609, 581 A.2d 452 (1990), *cert. denied sub nom. Insley v. Old Guard Mut. Ins. Co.*, 322 Md. 131, 586

A.2d 13 (1991). In *Eastern Shore,* a complaint was filed against the insured alleging battery and negligently resisting arrest. The insured filed a declaratory judgment action against his insurance company alleging that it owed him a defense pursuant to his insurance policy because the negligence count established a potentiality of coverage under the insurance policy. The insurer argued that the negligence count was based on the insured's intentional battery, and there was no duty to defend because the insurance policy excluded from coverage "bodily injury or property damage ... which is expected or intended by the insured." *Eastern Shore,* 84 Md.App. at 611, 581 A.2d at 453.

In holding that there was no potentiality of coverage under the insurance policy, the Court of Special Appeals noted that "there is nothing in ... the complaint ... to suggest, much less to assert, that the striking, pushing, or shoving was done negligently or that the harm resulting from it was unexpected or unintended. Nor is there any contention, in the complaint, that [the insured] was acting in self-defense." 84 Md.App. at 619–20, 581 A.2d at 458. The court concluded that because the negligence count incorporated by reference the earlier allegations which charged "that the conduct was deliberate and that the harm caused by it was at least expected, if not intended," the coverage exclusion applied and the insurer had no duty to defend its insured. 84 Md.App. at 620, 581 A.2d at 458. The court further held that two exhibits consisting of deposition testimony and the special jury verdict which indicated that the acts were not intentional were properly excluded from a determination of whether there was a potentiality of coverage under the policy. 84 Md.App. at 627, 581 A.2d at 461. This holding was based on the "exclusive pleading rule" which, as characterized by the Court of Special Appeals, mandates that a determination of a potentiality of coverage is made solely by reference to the insurance policy and the complaint and prohibits the use of extrinsic evidence to determine whether there is a potentiality of coverage. Thus, the court held that because no potentiality of coverage was established by examining the policy and the plaintiff's complaint,

the insurer had no duty to defend its insured. In *Eastern Shore,* the Court of Special Appeals' reliance on the exclusive pleading rule to prohibit an insured from producing extrinsic evidence to establish a potentiality of coverage was misguided.

■ Although we have held that an *insurer* may not use extrinsic evidence to contest coverage under an insurance policy if the tort suit complaint establishes a potentiality of coverage; we have not had occasion to determine whether an *insured* may rely on extrinsic evidence to establish a potentiality of coverage when the insurance policy and the allegations in the complaint do not establish a potentiality of coverage. *See Brohawn,* 276 Md. at 408, 347 A.2d at 850.

■ Our cases indicate that where a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured. In *U.S.F. & G. v. Nat. Pav. Co.,* 228 Md. 40, 178 A.2d 872 (1962), we noted:

" 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially,* a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, *such doubt will be resolved in insured's favor.' "* (Emphasis added).

228 Md. at 54, 178 A.2d at 879 (quoting C.T. Drechsler, Annotation, *Allegations in third person's action against insured as determining liability insurer's duty to defend,* 50 A.L.R.2d 458, § 22 at 504 (1956)).

In *Brohawn, supra,* the basis for our refusal to permit the insurer to utilize a guilty plea to establish that there was actually no coverage under the insurance policy was because the tort allegations established a duty to defend and once "the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend." 276 Md. at 407, 347 A.2d at 850. In *Brohawn* we held that once a potentiality of coverage

is established by the tort suit complaint, an insurer cannot utilize extrinsic evidence to contradict the potentiality of coverage which was established by that complaint. 276 Md. at 408, 347 A.2d at 850. *Brohawn* in no way intimates that reference to outside sources is prohibited if that reference is necessary to determine whether there is a potentiality of coverage under an insurance policy where the tort plaintiff's complaint neither conclusively establishes nor negates a potentiality of coverage. In fact, *Brohawn*'s express language indicates the contrary. It states that "[e]ven if a tort plaintiff *does not allege facts* which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." 276 Md. at 408, 347 A.2d at 850 (emphasis added). By stating that a potentiality of coverage under an insurance policy can be established even if the tort allegations do not clearly establish coverage, it follows that the insurance policy along with the allegations in the complaint are not the sole means of establishing a potentiality of coverage. *See, e.g., Bausch & Lomb v. Utica Mutual*, 330 Md. 758, 765 n. 1, 625 A.2d 1021, 1024 n. 1 (1993) (noting that "[t]he insurer must defend its insured if it appears from a suit *or other sources available at the time* that there is a potential of liability under the policy") (emphasis added); *Harford County v. Harford Mut. Ins.*, 327 Md. 418, 436 n. 6, 610 A.2d 286, 295 n. 6 (1992).

In a case factually analogous to the present case, the Nebraska Supreme Court was required to determine whether an insurer had a duty to defend its insured in a tort action based on allegations of assault and battery where the insurance policy had an exclusion from coverage for intended or expected acts. *See Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981). The court initially noted that those cases holding that an insurer need only look to the policy and the complaint to determine whether it has a duty to defend "are not based upon sound reasoning nor recognize the reality of today's litigation." *Novak*, 313 N.W.2d at 641. The court continued by stating that examining only the policy and complaint to determine coverage is inadequate because a plaintiff

may plead anything and coverage under a policy may sometimes be established only upon a tender of a defense from an insured. The court reasoned that:

> "[To hold that an insurer need only look to the complaint and the policy] ignore[s] the reality of the situation. The insured's basis for defending may involve an affirmative defense ... which can only be raised in the answer. To therefore suggest that the [insurer] only looks to the petition and ignores the fact that there is a justifiable, valid, and legal defense to the claim would be to entrust a third party with the determination of whether the insured should get that which the insured bargained for and which the insured is entitled to receive ... a defense."

*Id.* The court concluded by holding that "[a]n insurer has a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy ... [and an] insurer may not confine its investigation to the allegations of the petition filed by the party claiming damages." *Novak,* 313 N.W.2d at 642.

Other jurisdictions have also held that an insurer must examine facts beyond the allegations in the complaint to determine whether there is a potentiality of coverage under an insurance policy when the allegations in the complaint do not establish a potentiality of coverage. *See Columbia Union Nat. Bank v. Hartford Acc. and Indem.,* 669 F.2d 1210, 1215 (8th Cir.1982) ("[b]efore declining to defend ... an insurer has an obligation to look beyond the allegations in the complaint"); *Shepard Marine Const. Co. v. Maryland Cas. Co.,* 73 Mich. App. 62, 250 N.W.2d 541, 542 (1977) (an "insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible"); *Spruill Motors, Inc. v. Universal Under. Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407 (1973) ("[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a 'potential of liability' under the policy, the insurer bears a duty to defend."); *see also* C.T. Drechsler, Annotation, *Allegations in*

*third person's action against insured as determining liability insurer's duty to defend,* 50 A.L.R.2d § 20, at 500–01 (citing cases which have held that "in determining its duty to defend ..., the insurer should not look exclusively to the allegations of the complaint or petition in the proceedings against the insured, but [should] be guided by the actual facts of which it has knowledge"); 7C John Alan Appleman, *Insurance Law and Practice* § 4684.01, at 95 (Walter F. Berdal ed., 1979) (noting that "even though the pleadings do not show coverage, where known or reasonably ascertainable facts become available that show coverage the duty to defend devolves upon the insurer"); *but see Donegal Mut. Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699, 702 (1989) (holding that the complaint established that the conduct was excluded from policy coverage and the insured's answer claiming self-defense was not considered in determining whether there is a duty to defend); *Grenga v. National Surety Corporation,* 113 R.I. 45, 317 A.2d 433, 435–36 (1974) (an insured's assertion of self-defense is of no consequence to the insurer's duty to defend because only the complaint is examined to determine whether an insurer has a duty to defend and other facts made known to the insurer do not alter this rule).

Additionally, permitting an insured to refer to extrinsic evidence to establish a potentiality of coverage comports with a policy concern we articulated in *Brohawn* wherein we stated that "[t]he promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums." 276 Md. at 409, 347 A.2d at 851. Liability insurance is in effect "litigation insurance" procured by an insured to protect the insured "from the expense of defending suits brought against him." *Brohawn,* 276 Md. at 410, 347 A.2d at 851. Allowing an insured the opportunity to establish a defense to tort allegations which may provide a potentiality of coverage under an insurance policy prior to the insured incurring expenses associated with maintaining a defense in that tort action is precisely what the insured bargained for under the insurance contract. Thus, permitting an insured to establish a potentiality

of coverage by reference to sources other than the policy and the complaint addresses this policy concern. *See* Andrew Janquitto, *Insurer's Duty to Defend in Maryland,* 18 U.Balt.L.Rev. 1, 46 (1988) (noting that requiring an insurer to defend its insured if it knows or should know of facts which indicate a potentiality of coverage "flows naturally from the *Brohawn* rule because in determining the intent of the parties to an insurance contract, the courts consider the reasonable expectations of the insured, and under a standard liability policy, an insured reasonably expects that the insurer will defend him whenever there is a potentiality of coverage based on a claim") (citations omitted).

Furthermore, allowing an insurance company to refuse to defend an insured based solely on allegations in a complaint filed by an uninterested third-party leaves the insured with no choice but to rely on a plaintiff to file a well-pleaded complaint in order to establish a potentiality of coverage under the insured's insurance policy. Permitting an insurer to rely solely on the tort plaintiff's allegations for a determination of whether the insurer has a duty to defend is particularly problematic in assault and battery cases such as in the instant case where a potentiality of coverage will normally be established only when the insured tenders a defense to the claim. This problem is evidenced in the instant case because the *Beyer* complaint does not raise, and ordinarily would not be expected to raise, the potential for coverage based on Cochran's claim that he used reasonable force in self-defense. Thus, in the instant case, allowing Cochran to present facts which establish a potentiality of coverage under the Aetna policies is the only way to establish that the *Beyer* action is potentially covered under those policies. It also ensures that Cochran is not foreclosed from receiving the defense to which he is entitled merely because the complaint fails to plead allegations that establish a potentiality of coverage under the insurance policies.

### III.

In holding that an insured may establish a potentiality of coverage under an insurance policy through the use of

extrinsic evidence, we note that an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy. In the action for declaratory relief in the instant case, Cochran asserted that he "fully informed the agents of [Aetna] of the factual details regarding the allegations in the Complaint" and denied that his actions constituted an assault and battery because "Victoria Beyer voluntarily joined into an argument between [Cochran] and his brother ... and [Cochran] was protecting himself from the assault by his brother...." Cochran also informed Aetna that his father witnessed the whole incident and would corroborate his testimony. These facts sufficiently establish a reasonable potential that a self-defense issue will be generated at trial. Thus, because Cochran has established that the *Beyer* action is potentially covered under the Aetna insurance policies, Aetna has a duty to defend Cochran in that action.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER AETNA CASUALTY & SURETY COMPANY.*