732 A.2d 388

## NATIONWIDE INSURANCE COMPANIES

### v.

## Connie RHODES, Personal Representative of the Estates of John Gray Watson and Ethel Watson.

### No. 1126, Sept. Term, 1998.

Court of Special Appeals of Maryland.

July 2, 1999.

Charles I. Joseph (Robert H. Bouse, Jr. and Anderson, Coe & King, LLP, on the brief), Baltimore, for appellant.

Haven N. Shoemaker, Jr., Hampstead, for appellee.

Argued before MOYLAN, THIEME, KENNEY, JJ.

KENNEY, Judge.

Appellant, Nationwide Insurance Companies, appeals from the decision and Order of the Circuit Court for Baltimore City granting summary judgment in favor of Connie Rhodes, appellee, in appellee's action to recoup attorneys' fees incurred in defending the estates of John Gray Watson and Ethel Watson, decedents, against a worker's compensation claim.

## Facts and Procedural History

Connie Rhodes, appellee, is the personal representative of the estates of John and Ethel Watson. Ethel Watson died on March 7, 1995, and John Watson died on December 10, 1995.

On December 28, 1992, the Watsons' home health aide, Barbara Dower, was injured when she slipped on ice on the exterior steps of the Watsons' home while getting medicine for Mrs. Watson. Ms. Dower filed a claim with the Workers' Compensation Commission ("WCC") against the Watsons and the Uninsured Employers Fund, alleging that she was the Watsons' employee and entitled to recover for any injury suffered in the course of the employer-employee relationship.

Notified of Ms. Dower's claim, appellant denied coverage, informing the Watsons by letter that "You have Medical Payment coverage under your Homeowner's policy that applies to bodily injury to others but it excludes a person eligible

to receive benefits required to be provided under the Workmen's Compensation. Since Ms. Dower was employed by you, this coverage would not be available to her." The Watsons informed appellant that, in their view, (1) Ms. Dower was an independent contractor, and therefore not subject to the workers' compensation exclusion, and (2) Ms. Dower was also covered under the policy as a "residence employee."

The WCC conducted a hearing on April 26, 1994, at which the Watsons were represented by an attorney at their own expense. On May 27, 1994, the WCC released its finding that Ms. Dower was an independent contractor and not entitled to workers' compensation benefits under Maryland law. Ms. Dower appealed the WCC's decision to the Circuit Court for Baltimore City on June 3, 1994. On December 2, 1994, Ms. Dower also filed a separate negligence suit in the Circuit Court for Baltimore City against the Watsons.

Ethel Watson died on March 7, 1995. Appellant notified John Watson that, pursuant to the personal liability section of the Watsons' homeowner's policy, it would appoint an attorney to represent Mr. Watson in the negligence suit, but it would not represent Mr. Watson's interests in Ms. Dower's appeal of the WCC's decision because the homeowner's policy did not cover that issue. John Watson died on December 10, 1995.

In January 1996, the circuit court ruled in Ms. Dower's favor in her appeal of the WCC's decision, finding that she was entitled to workers' compensation benefits.[1] Because the Watsons did not have workers' compensation insurance, Ms. Dower collected her benefits from the Maryland Uninsured Workers' Compensation Fund and dismissed her negligence suit against the Watsons.

Appellee, on behalf of the Watsons' estates, filed a complaint against appellant to recoup the attorneys' fees incurred in opposing Ms. Dower's workers' compensation action and included a motion for summary judgment. Appellee claimed that appellant's duty to defend was triggered by the existence

---

1. We find no record of an appeal from that circuit court decision.

of a "potentiality for coverage." Appellant filed an answer and a motion for summary judgment, arguing that it had no obligation to defend the Watsons in the workers' compensation proceedings because the homeowner's policy excluded any potentiality of coverage for workers' compensation liability.

After a hearing on February 25, 1998, the circuit court granted appellee's motion for summary judgment and awarded appellee $3,475.50 in attorneys' fees related to the workers' compensation proceedings and $2,500 in attorneys' fees for the present case.

## Question Presented

Appellant presents one question for our review, which we have condensed:

1. Did the circuit court err by granting appellee's Motion for Summary Judgment?

Because we answer in the affirmative, we shall reverse.

## Discussion

### Standard of Review

When granting a motion for summary judgment, a trial court makes rulings as a matter of law, resolving no disputed issues of fact. *Heat & Power Corp., et al. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990) (citations omitted); Maryland Rule 2–501. The standard for appellate review of a trial court's grant or denial of a motion for summary judgment is whether the trial court was legally correct. *Heat & Power*, 320 Md. at 592, 578 A.2d 1202. When reviewing a trial court's construction or interpretation of a written contract, we do so as a matter of law. *Metropolitan Life Ins. Co. v. Promenade Towers Mut. Housing Corp.*, 84 Md.App. 702, 716–717, 581 A.2d 846 (1990), *aff'd*, 324 Md. 588, 597 A.2d 1377 (1991). The "clearly erroneous" standard of review does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact. *Heat & Power*, 320 Md. at 591–92, 578 A.2d 1202 (citations omitted).

■■■ An insurance policy is interpreted in the same manner as any other contract. *Baltimore Gas and Elect. Co. v. Commercial Union Ins. Co., et al.,* 113 Md.App. 540, 553, 688 A.2d 496 (1997). "Maryland courts do not follow the rule that an insurance policy must be strictly construed against the insurer." *Id.,* at 554, 688 A.2d 496 (citing *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758, 779, 625 A.2d 1021 (1993)). The principal rule in the interpretation of contracts is to effect the intentions of the parties. *Kasten Constr. Co., Inc. v. Rod Enterprises, Inc.,* 268 Md. 318, 328, 301 A.2d 12 (1973); *McIntyre v. Guild, Inc.,* 105 Md.App. 332, 355, 659 A.2d 398 (1995). When a contract's wording is clear, the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract. *Roged, Inc. v. Paglee,* 280 Md. 248, 254 372 A.2d 1059 (1977). If reasonably possible, effect must be given to every clause and phrase of a contract, so as not to omit an important part of the agreement. *Bausch & Lomb,* 330 Md. at 782, 625 A.2d 1021.

### The Homeowner's Policy and Statutory Requirements

The "Liability Coverages" section of the Watsons' homeowner's policy ("the policy") states in "Coverage E—Personal Liability" that

> [w]e [appellant] will pay damages the insured [the Watsons] is legally obligated to pay due to an occurrence.[2] We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

In the "Exclusions" section, the pertinent provisions state:

2. Coverage E—Personal Liability does not apply to:

. . .

---

**2.** The policy defines "Occurrence" as "bodily injury or property damage resulting from: one accident; or continuous or repeated exposure to the same general condition."

d. bodily injury to a person eligible to receive benefits required to be provided or voluntarily provided by the insured under the following: a workers' or workmen's compensation, non-occupational disability, or occupational disease law.

The policy also provides, in "Coverage F—Medical Payments to Others," that

[w]e will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you [the insured]. It does not apply to regular residents of your household. It does apply to residence employees.[3] This coverage applies to others as follows:

a. to a person on the insured location with the consent of an insured.

b. to a person off the insured location, if the bodily injury:

(1) arises out of a condition in the insured location.

The applicable exclusion provides:

3. Coverage F—Medical Payments to Others does not apply to bodily injury:

. . .

b. to a person eligible to receive benefits required to be provided or otherwise provided under the following: workers' or workmen's compensation, non-occupational disability, or occupational disease law.

### The Circuit Court's Decision

At the summary judgment hearing, the circuit court, after reviewing other provisions of the policy, appeared to focus its analysis on exclusion 2.d., and ultimately found that that

---

3. "Residence employee" is defined in the policy as "an employee of an insured who performs duties in connection with maintenance or use of the residence premises. This includes household or domestic services or similar duties elsewhere not in connection with the business of an insured."

provision did not exclude Ms. Dower's claim from the policy's coverage. The court found that the Watsons had not provided the benefits voluntarily, and "[t]hat narrows it right down to one verb in that sentence. Required. Were they required to be provided...." Shortly thereafter, the trial court announced its decision:

> [T]he fundamental issue here ... which is ... when you have this sense of uncertainty, the burden is shifted to the carrier to move in and provide the benefit. Now I am saying to you, as an insured of Nationwide ... [the trial court analogized to a hypothetical situation in which he, as an insured, was sued by a gardener for worker's compensation for a job-related injury]. I don't know what's going on here. I'm talking to my agent or my broker. All I've got is this homeowner's policy. And he's—I have to answer this— I got this thing called a claim and it says I have to appear at the Worker's Compensation Commission next month. What do I do?

The court stated further:

> We all understand that in the public policy sense, a person who buys homeowner's coverage is entitled to protection for any reasonable expectation of expense to them arising out of—This is, I grant you, a very broadly stated insurance policy that I'm writing as we speak here, for any untoward, unexpected occurrence, arising out of the ownership of that home. That's basically what you're buying. Now you have lots of exclusions and you have limits, but essentially that's what the purpose of homeowner's is. In fact, I have always been somewhat amazed at the extent to which homeowner's goes to cover things that go outside the house, but are related back to ownership of that property. So in a sense you have almost a presumption, when a person can make a reasonable case that by reason of the ownership of this property, I have sustained the following liability, to wit, attorney's fees. You then have the duty to say, I'm sorry but it's been excluded. You would have to come to a particularized exclusion and if you don't, it's covered.

## I.

Appellant presents two arguments on appeal. First, appellant argues that the Medical Payments section of the policy did not implicate appellant's duty to defend the Watsons, because the Watsons had no direct liability under that section, as any claim is made directly against the insurer. Appellant also argues that, even if there was potential coverage under the Medical Payments section, it had no duty to defend the Watsons, because that section did not specifically create a duty as is provided for in the personal liability provisions.

Appellant's second argument relates to the personal liability coverage. It contends that it had no duty to defend the Watsons because Workers' Compensation benefits are not damages, and the policy's coverage specifically excluded workers' compensation benefits. In appellant's opinion, once it had informed Ms. Dower that she was not covered by the Medical Payments section, to invoke liability coverage, she would have had to sue appellant directly, which she did and which appellant defended.[4]

██ We begin our analysis fully recognizing that the duty to defend should be construed liberally in favor of the policyholder. *Litz v. State Farm Fire & Casualty Co.*, 346 Md. 217, 231, 695 A.2d 566 (1997); *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107, 651 A.2d 859 (1995); *Brohawn v. Transamerica*, 276 Md. 396, 409, 347 A.2d 842 (1975).

In *Brohawn*, an insurance company, Transamerica, sought a declaratory judgment that it had no obligation to either defend or indemnify an insured against actions brought by injured third parties, when the actions were based on allegations of negligence and assault. *Id.*, at 397–398, 347 A.2d 842. The insured had pleaded guilty to assault in a criminal prosecution stemming from the same incident, and the insured's policy

---

4. Ms. Dower was injured on December 28, 1992; she filed her claim with the WCC on January 20, 1993; and on February 2, 1993, appellant informed Ms. Dower's attorney that appellant believed that Ms. Dower was injured while an employee of the Watsons and was therefore excluded from coverage by the policy's Medical Payments section.

specifically excluded from coverage any act the insured committed with intent to injure. The policy also provided, however, that Transamerica would defend the insured against a suit alleging bodily injury "even if any of the allegations of the suit are groundless, false, or fraudulent." *Id.*, at 400, 347 A.2d 842. The Court observed that "[t]he plain meaning of this covenant [the policy] is that the insurer will defend any suit stating a claim within the policy even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.'" *Id.*, at 408–409, 347 A.2d 842 (citations omitted). Transamerica argued that its interests were divergent from those of the insured, because once liability was established Transamerica would want to show that the injuries were intentional, and therefore not covered. The Court observed that

> "[t]he promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him. By clear and unequivocal language, Transamerica has assumed the obligation of relieving its insured of the expense of defending an action alleging and seeking damages within the policy coverage. Additionally, the insured could reasonably expect that the insurer will employ its vast legal and investigative resources to defeat the action for the mutual benefit of both the insurer and the insured."

*Id.*, at 409–410, 347 A.2d 842 (citations omitted).

In *Aetna*, the Court of Appeals held that, because the insured had introduced evidence that his policy's exclusion *might not* apply to Aetna's defense of his civil suit for assault and battery, a potentiality of coverage existed, and Aetna had to defend him. *Id.*, at 112, 651 A.2d 859. The Court used the two-part analysis identified in *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 193, 438 A.2d 282 (1981), but expanded the scope of the second part beyond a plaintiff's

allegations to include extrinsic evidence referred to by the insured to establish a potentiality of coverage. *Aetna*, 337 Md. at 110, 651 A.2d 859.

The "exclusive pleading rule" dictated that "an insurer's defense obligation is determined solely by the allegations against the insured in the claimant's pleadings." *Mount Vernon Fire Ins. Co. v. Scottsdale Ins. Co., et al.*, 99 Md.App. 545, 556, 638 A.2d 1196 (1994), *aff'd in part, rev'd in part*, 338 Md. 131, 656 A.2d 779 (1995) (quoting Andrew Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U.Balt.L.Rev. 1, 7 (1988)); *see Aetna*, 337 Md. at 106–07, 651 A.2d 859 (expanding analysis of potentiality of coverage to include extrinsic evidence proffered by insured). This rule has also been called the "eight corners rule," encompassing an examination of those matters within the four corners of both the insurance policy and the complaint:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

*Pryseski*, 292 Md. at 193, 438 A.2d 282. "Even if the complaint does not allege enough facts to establish whether the claim is or is not covered, the insurer has a duty to defend. It is the potential for coverage that creates the duty to defend." *Mount Vernon Fire Ins. Co.*, 99 Md.App. at 557, 638 A.2d 1196 (citing *U.S. Fidelity Guaranty Co. v. National Paving & Contracting Co.*, 228 Md. 40, 54, 178 A.2d 872 (1962)). After *Aetna*, the test became (1) what are the coverages and defenses under the terms and requirements of the policy; and (2) do the allegations in the tort action, or any extrinsic evidence referred to by the insured, potentially bring the tort claim within the policy's coverage? *See Aetna*, 337 Md. at 112, 651 A.2d 859.

The claim at issue is set forth in the standardized Employee's Claim form initiating Ms. Dower's claim with the WCC. Identifying herself as a "Nurse Assistant" and the Watsons as her "employers" she indicates that she suffered an "accidental injury" when she "[s]lipped on steps at front of house on my way to get prescription for employers." She makes a "claim for compensation for an injury resulting in disability, due to accident (or disease) arising out of and in the course of [her] employment." Clearly, her claim's predicate was a work related injury and the alleged employer-employee relationship and was based on a remedial statutory scheme.

 The circuit court complaint for damages involving the same injury, which properly was defended by appellant, was grounded in negligence and provided:

6. That the Plaintiff, as she was walking down steps from the front porch of the Defendants' home, slipped and fell on ice that was on the steps of the Defendants' residence.

7. That as a result of the Plaintiff's slipping and falling, she severely injured herself, including but not limited to fracturing her left ankle.

8. That the Defendants were negligent in failing to keep their premises safe and clear of ice and snow which had been permitted to accumulate on their front steps.

9. That as a direct result of the negligence and want of due care of the Defendants, the accident caused the Plaintiff to suffer bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and physical therapy services and treatment, loss of earnings and other damages. The loss and injuries are either permanent or continuing in nature and the Plaintiff will suffer the losses in the future. The Plaintiff was, and still is, unable to engage in her normal duties and activities thereby resulting in financial loss and deprivation of lifestyle.

The predicate for this action was the failure of the Watsons to maintain properly their "residence" or "premises." Although not expressly alleged, the Watsons' potential liability arises from their ownership or control of their home. Although liability insurance generally may be thought of as "litigation insurance," it is not insurance for any litigation that may arise. Even if the required nexus is only potential coverage, there still must be some link between the coverage provided and the duty to defend.

 Looking to the language of the policy, we can easily conclude that there is no coverage for a person eligible for "required" workers' compensation benefits under the liability or the medical payment provisions. On the other hand, Maryland Code Ann. (1991, 1998 Cum.Supp.), § 9–402 of the Labor and Employment Article ("L.E."), "requires" employers to provide the type of workers' compensation benefits sought by Ms. Dower, and provides that "each employer shall secure compensation for covered employees of the employer ..." by maintaining insurance with the Injured Workers' Insurance Fund or an authorized insurer. L.E. § 9–402(a). Although there is statutorily approved insurance and insurance alternatives available for the protection of one's employees, it is very clear that this policy excluded such coverage. The benefits claim made by Ms. Dower to the WCC was based on a remedial statutory scheme that impacted Mr. and Mrs. Watson because they were employers and not because they were homeowners. The employer-employee relationship is not an occurrence or accident contemplated by the policy and the cost of a defense to the assertion of such a relationship does not constitute damages under the policy.

Appellee seeks to invoke potential coverage through the defense to the claim. Appellee argues that the "Watsons reasonably expected a defense to a legal proceeding, and nowhere in Appellant's policy does it state that such a defense would not be provided.... [T]he potentiality of coverage did not exist from an examination of the nature of Dower's claim, obviously, but from the defenses thereto which could trigger coverage for personal liability and [medical payments]." In

other words, the defense is that the claimant, Ms. Dower, was not entitled to workers' compensation because she was not an employee. Therefore, if she was not an employee under the workers' compensation law, she was not a person eligible for workers' compensation benefits and was not excluded from coverage. We believe this stretches the nexus string too far. What was at stake for the Watsons before the WCC was the burden of noncompliance that would result from a determination that Ms. Dower is an "employee" entitled to benefits. If successful, Ms. Dower receives scheduled benefits, of which medical payments may be a part, as determined under the workers' compensation law, and the Watsons incur an obligation to the Fund. L.E. § 9–1005. If Ms. Dower was unsuccessful, she would make a claim directly against appellant, and not the appellee, for medical payments. To impose an obligation to defend workers' compensation claims effectively transforms personal liability and medical payments policies into workers' compensation and statutory compliance policies. Such a transformation is not in accord with a reasonable expectation of coverage under a homeowner's policy.

For these reasons, the trial court erred by granting summary judgment for appellee. There was no potentiality that the policy could offer coverage for the workers' compensation claim brought by Ms. Dower and, as a result, summary judgment should have been entered in favor of appellant.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY, WITH INSTRUCTIONS TO ENTER SUMMARY JUDGMENT FOR APPELLANT.**

**COSTS TO BE PAID BY APPELLEE.**