dissenting, in which BATTAGLIA, J., joins.
Respectfully, I dissent. The Majority Opinion appears to assume, but not address, that product packaging can constitute “advertising” within the meaning of the Policy, and instead focuses on the “causal connection” requirement as determinative. I would hold that product packaging constitutes “advertising” as that term is defined in the insurance policy; and the issues as to policy exclusions were not preserved for appellate review. As such, I would affirm the judgment of the Court of Special Appeals.
Insurers contend that the Court of Special Appeals erred in concluding that a product’s packaging was an “advertisement.” According to Insurers, in interpreting the terms of the Policy, *711 the Court of Special Appeals improperly substituted its own definition of relevant terms in place of the unambiguous definitions within the Policy. Blackstone responds that the Court of Special Appeals was correct in holding that a product’s packaging fits within the Policy’s definition of “advertisement!;,]” and argues that nothing within the Policy’s definition of “advertisement” excludes a product’s packaging or a product’s display from being an “advertisement.” In Blackstone’s view, the Policy’s definition of “advertisement” focuses on the act of broadcasting or publishing to the general public. I agree with Blackstone.
In determining whether an insurer has a duty to defend an insured, the Court must engage in a two-part inquiry: “(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action [underlying action] potentially bring the tort claim within the policy’s coverage?” Walk v. Hartford Cas. Ins. Co., 382 Md. 1, 15, 852 A.2d 98, 106 (2004) (citations omitted) (brackets in original). Thus, I would begin the analysis with the scope of coverage under the relevant terms and provisions of the Policy. See id. at 15, 852 A.2d at 106. The “personal and advertising injury” provision of the Policy provides, in pertinent part: “[Insurers] will pay those sums that the insured becomes legally obligated to pay as damages because of ‘personal and advertising injury’ to which this insurance applies. [Insurers] will have the right and duty to defend the insured against any ‘suit’ seeking those damages.” The Policy defines “advertisement” as “a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.”
In the complaint, RMG alleged that Blackstone sold the “Vision Enhance” product to Wal-Mart, which resold the product under its “Mainstays” label. According to RMG, “some of the ‘Mainstays’ low vision lighting products actually include[d] the use of the ‘Vision Enhance’ name on the boxes, and use the same or substantially similar box design, copy on the box, and product instructions that are identical to the first *712 ‘Vision Enhance’ product, that was created in substantial part by ... RMG.” From my perspective, the initial inquiry is whether a product’s packaging falls within the scope the Policy’s definition of “advertisement.” I would hold that it does.
In examining the Policy’s definition of “advertisement,” I note that the terms used — specifically, “notice,” “broadcast” and “published” — are exceptionally broad and are not defined within the Policy. Impliedly, Insurers assert that “broadcast” and “published” should be strictly construed to encompass only traditional marketing mediums, such as television, magazines, and internet.[1] Such a constricting definition is not supported by the plain and common use of the terms. Indeed, “broadcast” means “to make widely known,” Broadcast, Merriam-Webster, http://www.merriam-webster.com/dictionary/ broadcast, and “publish” means “to make generally known” or “to disseminate to the public,” Publish, Merriam-Webster, http://www.merriam-webster.com/dictionary/publish. Under these broad definitions, it can fairly be said that a product’s packaging “disseminates” or “makes known” to the public information about a product or good.[2]
Having determined that product packaging falls within the Policy’s definitional scope of “advertisement,” I would next consider whether RMG’s allegations trigger coverage under the Policy. See Walk, 382 Md. at 15, 852 A.2d at 106. “Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.” Id. at 16, 852 A.2d at 106 (emphasis in original). This inquiry, of necessity, involves consideration of *713 whether the allegations of RMG’s complaint demonstrate that RMG claimed an “advertising injury” as that term is defined in the Policy. See id. at 16, 852 A.2d at 107 (“Under the terms of the Policy, [insurer] had a duty to defend [insured] only if the [underlying] complaint and the extrinsic evidence claim an ‘advertising injury.’ ”). Here, in agreement with the Court of Special Appeals, I would conclude that RMG’s allegations of unjust enrichment, which specifically refer to the “Vision Enhance” name, box design, copy, and product instructions, sufficiently alleged an “advertising injury” and thus could potentially be covered under the Policy; thus, I would resolve the duty to defend in Blackstone’s favor. I explain.
In the complaint, in the claim for unjust enrichment, RMG alleged that Blackstone was unjustly enriched because it “continues to retain the benefit conferred upon it by Plaintiff through, in part, its use of concepts, expert evaluations, ‘Vision Enhance’ brand name and packaging, all of which were developed by Plaintiff or with Plaintiff’s assistance.” (Emphasis added). Under the clear terms of the Policy, an “advertising injury” “means injury ... arising out of one or more of the following offenses: ... [t]he use of another’s advertising idea in your ‘advertisement’; or [i]nfringing upon another’s copyright, trade dress or slogan in your ‘advertisement’.” (Paragraph breaks omitted). In my view, RMG’s unjust enrichment claim alleged that it was injured by Blackstone’s use of RMG’s ideas in advertisements for Blackstone’s product, thus bringing it within the definition of “advertising injury” under the terms of the Policy. In other words, the unjust enrichment claim did, indeed, allege an advertising injury resulting from Blackstone’s use of RMG’s advertising ideas in its advertisements. Having determined that the coverage and requirements of the Policy include a product’s packaging as advertising and that the allegations of RMG’s complaint potentially brings the claim for unjust enrichment within the Policy’s coverage, I would conclude that Insurers had a duty to defend.[3]
*714 The Majority also does not address the issues of preservation and waiver. Blackstone asserts that Insurers waived all defenses, including Policy exclusions, that it did not raise in the circuit court.
Maryland Rule 8 — 131(a) provides, in pertinent part: “Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]” Appellate review of a grant of summary judgment must be “confined to the basis relied on by the trial court.” Sadler v. Dimensions Healthcare Corp., 378 Md. 509, 536, 836 A.2d 655, 671 (2003).
*715 At bottom, Insurers contend that they did not have a duty to defend Blackstone against RMG’s suit. To support this position, Insurers, both in their pleadings and during the hearing on the motion for summary judgment before the circuit court, relied exclusively on the argument that RMG’s claims did not fall within the scope of an “advertising injury” as defined under the Policy. Indeed, in a statement of undisputed facts, Insurers emphasized that, in addressing “whether coverage exists under the insuring agreement of the policy!, they have] not relied on the breach of contract exclusion.” Moreover, during his argument before the circuit court, Insurers’ counsel stated:
Pit’s clear on the face of [RMG’s] second amended complaint that the allegations don’t come within the [P]olicy[’s] coverage!]. But even if Blackstone could get over that hurdle, then we do look down to the ... exclusions. And there are two relevant exclusions in this case.... [A]nd there’s a very clear reason why [Insurers] didn’t put [the exclusions] in the litigation at this point.... If we go down to the exclusion, it becomes [the Insurers’] burden [of proof]. It makes it harder to deal with on summary judgment!,] and so we decided not to include it.
The Court of Special Appeals held that Insurers affirmatively “waived” an exclusion-based defense to the denial of coverage that was not raised or addressed in filings or at the hearing. See Blackstone Int’l Ltd. v. Md. Cas. Co., 216 Md.App. 471, 486, 88 A.3d 792, 801 (2014). I agree with this characterization of Insurers’ procedural posture before the circuit court, and would conclude that the issue of an exclusion-based defense to the denial of coverage was not raised or addressed by Insurers in the circuit court such that they could raise the issue on appeal. See Md. R. 8-131(a).[4]
*716 For the above reasons, respectfully, I dissent and would affirm the judgment of the Court of Special Appeals.
Judge BATTAGLIA has authorized me to state that she joins in this opinion.

. It should be noted that Insurers do not contend that a product’s packaging is not a “notice” within the scope of "advertisement.”

. Insurers cite numerous cases from other jurisdictions to support its position that a product’s packaging cannot constitute "advertising.” Insurers’ reliance on these cases is misplaced, as the other jurisdictions’ courts held that a product itself, not a product’s packaging, cannot be considered "advertising.” See, e.g., Krueger Int’l, Inc. v. Fed. Ins. Co., 647 F.Supp.2d 1024, 1035 (E.D.Wis.2009).

. The Majority relies on language from Walk, 382 Md. at 17, 852 A.2d at 107, for the proposition that three requirements must be satisfied to *714 constitute an advertising injury: "The policy requires that the underlying plaintiffs allege the potential for three things: (1) an 'advertisement’; (2) an 'advertising injury,' which entails the copying of an advertising idea or style into an advertisement; and (3) a causal relationship between the advertising injury and the alleged damages.” Significantly, in Walk, id. at 17, 852 A.2d at 107, the three requirements were specifically limited to the insurance policy at issue. Moreover, in Walk, the only discussion of a causal relationship is in the above-quoted language. In Walk, the large part of the analysis concerned only whether the insured demonstrated that the underlying complaint alleged an advertising injury, and concluded that the insured did not show the allegation of an advertising injury either in the complaint or through extrinsic evidence; i.e., additional discussion of a causal relationship is not included in the case and the causal relationship prong is not applied. See id. at 17-24, 852 A.2d at 107-11. And, aside from Walk, the Majority relies on no other Maryland case discussing or applying the causal relationship requirement, and instead cites to cases from other jurisdictions as well as a treatise. See Maj. Op. at 698-702, 114 A.3d at 684-85. In my view, Maryland case law requires only that a court engage in the two-part inquiry set forth above — (1) what is the coverage and defenses under the terms and requirements of the policy and (2) do the allegations of the underlying complaint potentially bring the claim within the policy’s coverage. Thus, examining solely whether a causal connection exists is not consistent with Maryland case law. In any event, in this case, I agree with the Court of Special Appeals that determination of whether an "advertising injury” was alleged in RMG's complaint subsumes the discussion of causation. See Blackstone Int'l Ltd. v. Md. Cas. Co., 216 Md.App. 471, 481 n. 6, 88 A.3d 792, 798 n. 6 (2014). By the terms of the Policy, a determination that an advertising injury was alleged necessarily involves a causation analysis and the determination that the injury alleged "arise[s] out of one or more of the following offenses: ... [t]he use of another’s advertising idea in your 'advertisement' ”; i.e., one must determine that RMG's claims "arise[ ] out of” the use of RMG’s advertising ideas in Blackstone’s advertisements, a causation analysis.

. Although the Majority asserts that it does not rely on the provision of the Policy excluding breach of contract actions from coverage as an “advertising injury,” see Maj. Op. at 698 n. 10, 114 A.3d at 683 n. 10, the Majority discusses breach of contract actions exclusions and concludes that “La]dvertising injury clauses do not extend to breach of contract claims, and the mere inclusion of the phrase 'arising from' in *716 the Policy does not expand the scope to contract claims that happen to have a relationship with advertisement activity[,]” Maj. Op. at 705, 114 A.3d at 687. The Majority later concludes that RMG’s unjust enrichment claim is duplicative of its breach of contract and promissory estoppel claims. See Maj. Op. at 708-09, 114 A.3d at 689-70. Thus, in my view, whether Insurers waived or failed to preserve the Policy’s *717 exclusions, including the breach of contract actions exclusion, should have been addressed on the merits.