Ollie GATES, Appellant,

v.

CHICAGO TITLE INSURANCE
COMPANY, Respondent.

No. WD 42293.

Missouri Court of Appeals,
Western District.

May 14, 1991.

Mark Bryant, Kansas City, for appellant.

Thomas Sullivan, Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

PER CURIAM:

This is a new opinion.

Plaintiff Ollie Gates on January 9, 1978, acquired title by purchase to a 480-acre tract of land in Torrance County, New Mexico. He got a title insurance policy from Chicago Title Insurance Company, the defendant, in the amount of $75,000. The policy insured against loss or damages sustained or incurred by the insured (the plaintiff), "as of the date of the Policy," by reason of "lack of a right of access to and from the land."

The jury returned a verdict for Gates in the sum of $50,000, but the trial judge granted judgment n.o.v. in favor of Chicago Title Insurance Company. On Gates's appeal, we must determine whether he made a submissible case against defendant.

At the time Gates purchased the land, he had access by way of a road referred to in the evidence as "the east road," or sometimes "the Halderman road" which extended from a well-maintained gravel road a distance of ¾ mile to the Gates land. Gates was told at the time of the purchase that the east, or Halderman, road was a "county road and a county maintained road." Eighteen months later—in June, 1979—Gates was informed that Halderman had barricaded the road with a chain, and claimed the road as being his private property. Gates's investigation confirmed Halderman's claim. The foregoing facts were shown by Gates's testimony, and no objection was made to his testimony.

Chicago Title claims that, if Gates lacked access to the property by way of the Halderman road, described in the preceding paragraph, he yet had access by another road called the "west road." Gates had entered his property by this route after the Halderman road was closed. He called it a "goat path," and said: "It's indescribable. It comes in as a path through a rocky hill.... Makes a beautiful scenery to look at the mountains, but when you try to climb it, it's kind of hard. The boulders are not just rocks. I mean these are old, polished rocks that have over the years been washed by the water and then cleaned, and just rocks on the side of a hill that can be traversed by goats and mountain climbers and that kind of thing ... I [do not] conceive it to be a road." At one time he negotiated the path with a four-wheel drive vehicle. Passengers walked beside the vehicle "watching that we didn't fall over the side of the mountain.... Not in the least am I exaggerating.... Extremely dangerous." By this west route, the distance to the Gates land was about twice the distance from the highway as the east (Halderman) route.

Witness Fidel Montoya, who lived in the vicinity of the Gates land, described the west road as one negotiable only by foot or horseback, and if one attempted it in a four-wheel drive, it should not be after rain or snow.

We hold that the trial court correctly sustained defendant's motion for judgment notwithstanding the verdict. Plaintiff's evidence did not show prima facie that he had no right of access to his property at the time he acquired title thereto. It is true that the western road, the route by which plaintiff Gates had a right of access, was a difficult one and, in its present condition, of only limited useful-

ness, but if plaintiff had a *right of access,* even though over a rough and nearly impassable route, he makes no case under his title insurance policy. A title insurance company may not be expected to investigate the physical condition of a way of legal access to the insured property to determine if it is passable. In fact, the insurance policy expressly excludes from coverage *"loss or damage by reason of* ... (3) Encroachments, overlaps, conflicts in boundary lines, shortages in area, or *other matters which would be disclosed by* an accurate survey and *inspection of the premises."* (Emphasis added).

In *Title & Trust Co. of Florida v. Barrows,* 381 So.2d 1088 (Fla.Dist.Ct.App. 1979), the title insurance policy insured against "lack of a right of access to and from the land." The access to plaintiff's land, shown on the plat as a street, was only the extension of a sandy beach, and was covered by the tide in the spring and in the fall. The court reversed a judgment in favor of the insured landowner, saying: "In the case here before us, there is no dispute that the public record shows a legal right of access to appellant's property via the platted Viejo Street. The title insurance policy only insured against record title defects and not against physical infirmities of the platted street." *Id.* at 1090.

Another case very close to the present one is *Krause v. Title & Trust Co. of Florida,* 390 So.2d 805 (Fla.Dist.Ct.App. 1980). There the court held that the title insurance policy did not insure against the absence of a "reasonable and practicable" access route, but only the absence of "legal" access. So the insured owner had no claim under his policy although the only way to his land was not passable by ordinary passenger vehicles without a substantial amount of clay or rock fill. See to the same effect *Hocking v. Title Insurance & Trust Co.,* 37 Cal.2d 644, 234 P.2d 625 (1951).

In *Barrows,* the court took note of *Marriott Financial Services, Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 217 S.E.2d 551 (1975), cited by plaintiff for his position, but elected not to follow it. *Marriott* con-

tains language which tends to support plaintiff's claim. The language is actually *obiter dicta,* though, and the case is different from the present case in its essential facts. *Marriott* seems to stand alone in offering any support for plaintiff's policy claim.

Judgment affirmed.

GAITAN, Judge, dissenting.

I must respectfully dissent. I believe the term "right of access" must be given a reasonable, rather than a strict, construction when the right of access does not provide a reasonable access under the circumstances of the intended use of the property. This is tantamount to no access or a denial of "legal access." *See Marriott Financial Services, Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 217 S.E.2d 551, 565 (1975).