*Chicago Title Insurance Co. v. Allynnore M. Jen,* Case No. 2015, September Term 2019. Opinion filed on January 28, 2021, by Berger, J.

INSURANCE - COVERAGE – TITLE INSURANCE – TITLE DEFECTS – RIGHT OF ACCESS

In a case where property abuts a public road, by any length of the property, there is no title defect equating to a lack of right of access. Right of access as insured by title insurance companies does not equate to reasonable access nor vehicular access. The Maryland Insurance Administration did not err in determining that a legal right of access exists when the property in question is next to a public roadway in any capacity.

INSURANCE - COVERAGE – TITLE INSURANCE - PREMIUMS – NON-PAYMENT OF PREMIUMS FOR COVERAGE CHARGED

A title insurance provider's decision not to provide coverage under a certain provision does not rise to the level of non-payment of premiums not permitted under Md. Code Ann., § 27-216(a). So long as the Maryland Insurance Administration had evidence before it to determine that payments had previously been made under the same provision, non-payment under one insured's claim does not violate § 27-216(a).

INSURANCE - DUTY TO DEFEND – DETERMINATION OF DUTY – POTENTIALITY OF COVERAGE

The insurer's decision not to provide coverage under a duty to defend was arbitrary and capricious. When there is a potentiality of coverage that an underlying lawsuit may affect the insured's title for which they have a policy through their insurer, the insureds are entitled to a defense from their insurer. The insurer must review all new information presented to it when making its decision of whether to provide coverage.

Circuit Court for Baltimore County
Case No. 03-C-18-001953 and
03-C-17-010553

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2015

September Term, 2019

_____

CHICAGO TITLE INSURANCE CO.

v.

ALLYNNORE M. JEN

_____

Graeff,
Berger,
Eyler, Deborah S.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed:  January 28, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This case involves an administrative appeal from the Maryland Insurance Administration ("MIA") relating to the denial of coverage to the insured, Allynnore Jen and Charles Shuler ("Jen-Shulers"), under a title insurance policy provided by the insurer, Chicago Title Insurance Company ("Chicago Title").[1] The Jen-Shulers sought coverage and litigation expenses under their title insurance policy from Chicago Title under the provision protecting against a "lack of a right of access," due to a dispute with their neighbors, Dennis and Teresa Bull ("Bulls"), over the use of a shared driveway leading to their property.

After an investigation, an MIA Enforcement Officer issued a letter on March 23, 2017 directing Chicago Title to treat the Jen-Shulers as covered for their claim under the title insurance policy and to issue payment of all benefits due. Chicago Title requested a hearing from the MIA on April 24, 2017. A hearing was held on August 15, 2017. On September 28, 2017, the Insurance Commissioner issued a Memorandum and Final Order finding that Chicago Title had not violated Sections 4-113 and 27-216 of the Insurance Article of the Maryland Annotated Code. The Insurance Commissioner further found that Chicago Title had violated Section 27-303 of the Insurance Article, and directed Chicago Title to pay the Jen-Shulers' defense costs from a counterclaim in an underlying lawsuit. Both parties filed a petition for judicial review in the Circuit Court for Baltimore County. The circuit court reversed the determination of the Insurance Commissioner and remanded

---

[1] Subsequent to the commencement of this action, Charles Shuler passed away. We will still refer to the appellee as the Jen-Shulers as the case was originally filed by both Charles and Allynnore Shuler and the parties used this term throughout the litigation below.

the case to the MIA to reinstate the findings of the letter dated March 23, 2017, finding in favor of the Jen-Shulers on all three issues.

Chicago Title noted a timely appeal to this Court presenting two questions for our review, which are as follows:

> I. Whether the Insurance Commissioner's determination that Chicago Title did not violate Md. Code Ann., Ins. § 4-113(b)(5) and § 27-216(a) was legally correct and supported by substantial evidence.
>
> II. Whether the Insurance Commissioner's determination that Chicago Title violated Md. Code Ann., Ins. § 27-303 was legally correct and supported by substantial evidence.

For the reasons stated herein, we shall reverse and remand the judgment of the circuit court with directions to reinstate the September 28, 2017 decision of the Insurance Commissioner in its entirety.

## FACTS AND PROCEEDINGS

On May 28, 1998, the Jen-Shulers purchased 20 Edelweiss Way in Parkton, Maryland. Thereafter, the Jen-Shulers purchased a standard American Land Title Association ("ALTA") Owner's Policy of Title Insurance from Chicago Title (the "Policy"), effective June 8, 1998. Among other things, the Policy insured against a "[l]ack of a right of access to and from the land." In the Policy, "land" is defined as:

> the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but

2

> nothing herein shall modify or limit the extent to which a right
> of access to and from the land is insured by this policy.

Schedule A of the Policy specifically identified the land referred to in the Policy as:

> BEING KNOWN AND DESIGNATED as Lot No. 7, as
> shown on the plat entitled, "Plat One, Section Two, Chalet De
> La Rance," which Plat is recorded among the Land Records of
> Baltimore County in Plat Book EHK, Jr., No. 37, folio 123.

The improvements of such land are known as No. 20 Edelweiss Way.

Lot 7, owned by the Jen-Shulers, is an irregularly shaped parcel with a rectilinear piece abutting Edelweiss Way for a distance of fifteen feet. The Lot runs perpendicular to that piece for about 155 feet, then the Lot opens into an unevenly shaped area where the house on the property is located. The neighboring lot, Lot 8, is owned by the Bulls. Lot 8 consists of a matching panhandle strip that abuts both Edelweiss Way and Lot 7's panhandle before opening up into an area where the house on the Lot is built. There is a paved driveway, serving both properties, running mostly up the panhandle of Lot 8, but a small portion of such driveway is on the panhandle of Lot 7 as well. The developer-built utilities for both properties run mostly up the panhandle of Lot 7. A Plat of the properties was introduced in the proceedings below which demonstrates the positions of Lots 7 and 8 in relation to one another:[2]

---

[2] In the reproduction of the Plat below, Lot 7, owned by the Jen-Shulers, is identified in light gray and appears on the left side of the Plat. For the ease of viewing and differentiating between the properties, Lot 8, owned by the Bulls, is colored in dark gray and is identified on the right side of the Plat.

3



PLAT OF SURVEY

#20 EDELWEISS WAY BALTIMORE COUNTY MARYLAND

JOHN C. MELLEMA SR., INC.

LAND SURVEYORS

5409 EAST DRIVE BALTIMORE MARYLAND 21227 (410)247-7488

SCALE:
1"=100'

DATE:
10-23-12

JOB NO.
12214

4

The Jen-Shulers and the Bulls disputed whether the Jen-Shulers could drive on the Bulls' paved portion of the driveway to access their home. After the initial disagreement and confrontation, the Bulls constructed and placed obstacles on the driveway to prevent the Jen-Shulers from any access to the Bulls' portion of the driveway. On June 25, 2013, the Jen-Shulers filed suit against the Bulls seeking an injunction allowing them to use the Bulls' portion of the driveway to access their residence.[3]

Seven months later, on January 28, 2014, the Jen-Shulers made a claim to Chicago Title seeking coverage under the Policy. The Jen-Shulers asserted that the denial of access to the Bulls' portion of the driveway due to the Bulls' building of a fence denied them access to their own property. On February 7, 2014, after reviewing the claim, Chicago Title denied coverage. The Jen-Shulers filed several more requests for coverage and requests for reconsideration, each of which was considered by Chicago Title and subsequently denied.[4]

On June 12, 2014, the Bulls filed a counterclaim against the Jen-Shulers. The Jen-Shulers informed Chicago Title of the counterclaim in their Request for Reconsideration dated June 29, 2015. In their counterclaim, the Bulls sought damages from the Jen-Shulers for unjust enrichment, alleging that the Jen-Shulers used the Bulls' portion of the driveway

---

[3] *See Jen v. Bull*, Circuit Court for Baltimore County, Case No. 03-C-13-007203 OC.

[4] The Jen-Shulers filed requests for reconsideration on March 3, 2014; June 5, 2014; and June 29, 2015. Each request was denied by Chicago Title on April 29, 2014; July 11, 2014; and July 7, 2015.

without their permission. The Bulls asserted that they had paid for and maintained the driveway at their sole expense, including all expenses for snow removal until 2014, without any contribution from the Jen-Shulers. The unjust enrichment claim by the Bulls requested damages totaling $7,200.00. The Bulls also alleged defamation *per se*. They claimed that the Jen-Shulers defamed Mr. Bull by claiming in their complaint that Mr. Bull had committed bankruptcy fraud. Neither party asserts that Chicago Title should reimburse the Jen-Shulers for the payment of expenses related to the defense of the claim of defamation. On November 5, 2014, the Bulls agreed to dismiss the counterclaim with prejudice.

On July 1, 2015, the Jen-Shulers filed a complaint against Chicago Title with the MIA. The Jen-Shulers supplemented that complaint on July 10, 2015. Both parties briefed the matter before the MIA.[5] On March 23, 2017, an MIA Enforcement Officer issued a determination letter directing Chicago Title to cover the Jen-Shulers' claim. On April 24, 2017, Chicago Title requested an evidentiary hearing.

On August 15, 2017, the evidentiary hearing was held before the Director of Hearings. Chicago Title and the MIA both presented evidence and witnesses to testify at the hearing. On September 28, 2017, the Insurance Commissioner ("Commissioner")

---

[5] On February 3, 2017, the Jen-Shulers filed a complaint in the Circuit Court for Baltimore County against Chicago Title alleging breach of contract and requesting a declaratory judgment. *See Jen v. Chi. Title Ins. Co.*, Circuit Court for Baltimore County, Case No. 03-C-17-001117 CN. The case was dismissed for lack of jurisdiction on August 10, 2017. The Jen-Shulers maintained that they had not been properly notified of the dismissal and filed a Motion to Vacate on October 27, 2017. The Motion was denied on December 18, 2017. This Court heard the Jen-Shulers' appeal of the denial and affirmed the decision of the Circuit Court for Baltimore County. *See Jen v. Chi. Title Ins. Co.*, No. 2265, Sept. Term 2017 (filed April 2, 2019).

issued a comprehensive written opinion reversing the Enforcement Officer's decision. The Commissioner found that Chicago Title investigated the claim prior to the denial of coverage, as well as upon receipt of each of the Jen-Shulers' requests for reconsideration. Additionally, the Commissioner found that by completing diligent investigations upon receipt of each claim, Chicago Title had not violated Md. Code Ann., Ins. § 4-113(b)(5) ("§ 4-113(b)(5)"). The Commissioner relied on testimony from John Nielsen, an expert witness presented by MIA, who testified based on his extensive experience in the title insurance industry. The Commissioner found credible Mr. Nielsen's testimony and characterization that "right of access" did not include vehicular access or equate to vehicular access.

The Commissioner further addressed whether Chicago Title willfully collected a premium for insurance and did not provide coverage in violation of Md. Code Ann., Ins. § 27-216(a) ("§ 27-216(a)"). At the evidentiary hearing, Mr. Nielsen testified that title insurance carriers had spent millions of dollars to defend the right of access of insureds whose properties were landlocked and had no right of access to a public road. The Commissioner was persuaded by that testimony and determined that Chicago Title had not violated § 27-216(a) because it had paid out substantial sums in instances when a property was actually landlocked.

Finally, the Commissioner considered whether Chicago Title's decision not to defend the Jen-Shulers against the Bulls' counterclaim was arbitrary and capricious, pursuant to Md. Code Ann., Ins. § 27-303(2) ("§ 27-303(2)"). The Commissioner considered venerable Maryland case law holding that there is a duty to defend if there is a

potentiality that the claim could be covered by the Policy. The Commissioner determined that because there was a possibility that the Jen-Shulers could face a challenge to their access to a portion of their own land, Chicago Title had a duty to defend the Jen-Shulers against the counterclaim.

On October 27, 2017, the Jen-Shulers filed a Petition for Judicial Review of the September 28, 2017 decision of the Commissioner with the Circuit Court for Baltimore County. The Jen-Shulers alleged they were aggrieved by the Commissioner's decision that Chicago Title had not violated § 4-113 or § 27-216. On October 27, 2017, Chicago Title also filed a Petition for Judicial Review of the same decision of the Commissioner with the Circuit Court for Baltimore City. Chicago Title alleged it was aggrieved by the Commissioner's decision that Chicago Title had violated § 27-303. That case was transferred to the Circuit Court for Baltimore County and consolidated with the Jen-Shulers' Petition for Judicial Review. The Circuit Court for Baltimore County reversed the September 28, 2017 decision of the Commissioner and remanded the case to the MIA to reinstate the MIA Enforcement Officer's March 23, 2017 decision. This appeal followed.[6]

---

[6] On July 15, 2020, this Court ordered that the Jen-Shulers' brief as the appellee was due on August 28, 2020 and Chicago Title's reply as the appellant was due on October 2, 2020. The Jen-Shulers did not file a brief with this Court. On the day of oral argument, the appellee sent a facsimile to the Clerk of the Court and filed a motion for an extension of time to submit a brief and to postpone the oral argument scheduled for that morning. This Court proceeded with oral argument and hereby denies appellee's request to submit a late-filed brief. On August 28, 2020, the Maryland Land Title Association ("MLTA") filed a Motion for Leave to File Amicus Curiae Brief, along with its Amicus Curiae brief. We granted the Motion on September 11, 2020.

**DISCUSSION**

**Standard of Review**

"In an appeal from judicial review of an agency action, we look through the decision of the circuit court and review the agency's decision directly." *W. Montgomery Cnty. Citizens Ass'n v. Montgomery Cnty. Plan. Bd. of the Md.-Nat'l Park & Plan. Comm'n*, 248 Md. App. 314, 332–33 (2020) (citing *Clarksville Residents Against Mortuary Def. Fund, Inc. v. Donaldson Props.*, 453 Md. 516, 532 (2017)). Our review of the Commissioner's Memorandum Opinion is "limited to determining if there is substantial evidence in the record as a whole to support the [Commissioner's] findings and conclusions, and to determine if the [Commissioner's] decision is premised on an erroneous conclusion of law." *Clarksville Residents*, *supra*, 453 Md. at 532. When determining if there is "substantial evidence," we must "decide 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" *W. Montgomery Cnty. Citizens Ass'n*, *supra*, 248 Md. App. at 333 (quoting *Clarksville Residents*, *supra*, 453 Md. at 532). We owe no deference to the Commissioner's conclusions regarding findings of law. *Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc.*, 456 Md. 272, 293–94 (2017). Nonetheless, we cannot substitute our judgment for that of the Commissioner when reviewing findings of fact. *Id.* Notably, we "give considerable weight to the agency's interpretation and application of the statute which the agency administers." *Mayor of Rockville v. Pumphrey*, 218 Md. App. 160, 194 (2014) (citation and quotation marks omitted).

9

Additionally, "a reviewing court may not uphold an agency's decision if a record of the facts on which the agency acted or a statement of reasons for its action is lacking." *Becker v. Anne Arundel Cnty.*, 174 Md. App. 114, 138 (2007). The Commissioner's "[f]indings of fact must be meaningful and cannot simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions." *Id.* at 139 (citation omitted).

**I.     The Insurance Commissioner's determination that Chicago Title did not violate Md. Code Ann., Ins. § 4-113(b)(5) or § 27-216(a) was legally correct and supported by substantial evidence.**

The Jen-Shulers claimed coverage from Chicago Title under the section of the Policy insuring against a "[l]ack of a right of access to and from the land." The Jen-Shulers argued that they did not have a right of access to their land without obtaining an easement from the court to access the common driveway on the panhandle strip of Lots 7 and 8. The Jen-Shulers further alleged that access through the other public road abutting their land was not feasible and that they were prohibited from paving and making their portion of the panhandle strip into a driveway by Baltimore County rules and regulations.

Chicago Title argued that the Jen-Shulers' inability to use the driveway was not covered by the Policy. Chicago Title claimed that the Jen-Shulers had a legal right to access their land from either the panhandle strip or from the public road on the opposite side of the parcel. Essentially, Chicago Title claimed that if the Jen-Shulers can access their land in any way from a public road, they are not covered under the lack of a right of access provision of the Policy. Additionally, Chicago Title argued that the dispute between the Jen-Shulers and the Bulls fell under multiple exclusions of the Policy which declines

to provide coverage for matters arising from any law, ordinance, or governmental regulation.

> **A.** **Chicago Title's determination that the Jen-Shulers' claim was not covered under the policy was not without just cause in violation of Md. Code Ann., Ins. § 4-113(b)(5).**

Section 4-113(b)(5) of the Insurance Article of the Maryland Code provides:

> The Commissioner may deny a certificate of authority to an applicant or, subject to the hearing provisions of Title 2 of this article, refuse to renew, suspend, or revoke a certificate of authority if the applicant or holder of the certificate of authority refuses or delays payment of amounts due claimants without just cause.

Md. Code (1995, 2017 Repl. Vol.), § 4-113(b)(5) of the Insurance Article. Here, Chicago Title denied the claim from the Jen-Shulers because it concluded that the claim was not covered by the Policy, and even if it was, several exclusions of the Policy applied to preclude coverage. Our review of the record demonstrates that there was substantial evidence presented to the Director of Hearings to prove that Chicago Title investigated the claim and reviewed all of the necessary information in determining whether the Jen-Shulers were covered under this Policy provision.

"Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993). The Policy in this case expressly provides that the Jen-Shulers are insured against a "lack of right of access to and from the land," but there is no mention of insurance for "vehicular access"

11

or "reasonable access." In construing the meaning of this provision, we follow the plain meaning of the Policy. *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79 (2006).

Notably, if the Jen-Shulers wanted insurance covering vehicular access, there is a separate endorsement for such coverage they could have purchased from Chicago Title. Without this particular endorsement, or another endorsement requiring a survey, Chicago Title was not obligated to perform a survey of the Property. If a survey had been performed, Chicago Title would have been on notice of the later disputed issue regarding the panhandle strip and the driveway. Accordingly, it would be inequitable to require Chicago Title to insure against a condition of which they had no notice, nor a reason to have such notice.

This case centers around the definition of the "right" of access. The Jen-Shulers argued below that such right must be reasonable, such as a vehicular driveway to access their home. Chicago Title argued that any access suffices to satisfy the definition of a right of access. We agree with Chicago Title.

There is no Maryland case that has addressed the definition of "right" of access in a policy similar to the policy at issue in this case.[7] Indeed, our research -- thorough we trust -- has not located any case in Maryland that interprets the meaning of a "right" of

---

[7] This Court has considered the issue of lack of right of access in the circumstance of an entirely landlocked property. *Stewart Title Guar. Co. v. West*, 110 Md. App. 114, 138–39 (1996). The Jen-Shulers' situation differs because the Property is not landlocked as it abuts two public roads.

access.[8]  At the hearing before the MIA, Mr. Nielsen testified that he teaches claims adjusters across the country in accordance with case law throughout the United States which holds that there is no coverage under a title insurance policy for lack of a right of access if a parcel touches a public roadway.  Eight jurisdictions have considered cases involving a similar claim between 1951 and 2016.  Of those eight jurisdictions, seven have concluded that the necessary access is satisfied if the parcel touches a public roadway.

Critically, the District Court of Appeal of Florida held access does not mean reasonable and practicable access.  *Krause v. Title & Trust Co. of Fla.*, 390 So.2d 805, 806 (Fla. Dist. Ct. App. 1980).  There, the purchasers of land sued their title insurer for the costs of their litigation because the road was "not passable by ordinary passenger vehicles without a substantial amount of clay or rock fill."  *Id.* at 805 n.2.  This difficulty in traversing the road did not give rise to any claim that there was a lack of right of access. *Id.* at 806.  Additionally, the Missouri Court of Appeals issued a similar ruling when considering a claim that a "rough and nearly impassable route" was still suitable to meet the definition of a right of access.  *Gates v. Chi. Title Ins. Co.*, 813 S.W.2d 10, 12 (Mo. Ct. App. 1991).  The purchaser sued his title insurer, alleging an inability to access his property

---

[8] The Jen-Shulers argued below that the Insurance Commissioner was bound to follow the decision of the Baltimore County Circuit Court in *Jen v. Bull*, *supra*, Case No. 03-C-13-007203 OC, as a "case on point."  Critically, this case is a *nisi prius* decision issued by the trial court which has no precedential effect on our decision, nor on the Commissioner.  There is no authority supporting the Jen-Shulers' assertion that the Commissioner was bound by law to consider the unreported trial court opinion in *Jen v. Bull*.

13

due to the lack of a suitable road. *Id.* at 11.  The court held that the title policy insured only a legal right of access, even if such access is difficult or "of only limited usefulness." *Id.*

Notably, in *Magna Enterprises, Inc. v. Fidelity National Title Co.*, 127 Cal. Rptr. 2d 681 (Cal. Ct. App. 2002) a purchaser acquired four adjacent lots with a shopping center occupying three lots and an auto repair center occupying the fourth lot. *Id.* at 124.  The auto repair center lot was not directly accessible from a public road. *Id.* at 124–25.  Instead, it was connected to the shopping center on one side and a third-party's lot on the other side. *Id.*  The purchasers, believing city ordinances would not allow for an access road through the shopping center, negotiated for an easement with the neighboring third-party and eventually obtained such an easement by court order. *Id.*  Afterwards, the purchaser sued its title insurer for the costs incurred in obtaining the easement. *Id.* at 125.  The court in *Magna* found in favor of the insurer holding that "access" does not mean "practical access," and there was no evidence that the purchaser could not get access through the shopping center lot. *Id.* at 125–26.[9]

---

[9]  The overwhelming majority of other jurisdictions that have considered this issue held the same as *Krause*, *Gates*, and *Magna* for the identical reason, namely, that "access" in title insurance policies does not equate to "reasonable access." *See Riordan v. Laws. Title Ins. Corp*, 393 F. Supp. 2d 1100, 1102, 1105 (D.N.M. 2005) (holding that purchasers were not denied legal access because they had pedestrian access to and from the property despite the fact that the horse trail connecting the property was "unsuitable for vehicular access"); *James v. Chi. Title Ins. Co*, 339 P.3d 420, 423–24 (Mont. 2014) (holding that lack of a specific situs for an access easement does not mean the purchasers of land were without legal access to the subject land); *43 Park Owners Grp., LLC v. Commonwealth Land Title Ins. Co.*, 121 A.D.3d 937, 938–39 (N.Y. App. Div. 2014) (holding that a retaining wall preventing vehicular access does not prevent a "lack of right of access to and from the land" because the title policy "refers to the absence of a legal right of access and does not cover claims concerning lack of an existing means of physical access"); *Title & Trust Co.*

14

Despite the clear national trend towards holding that a lack of right of access does not mean "reasonable access," one jurisdiction has found otherwise. *See Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 217 S.E.2d 551 (N.C. 1975). In *Marriott*, a purchaser of commercial property sued its title insurer alleging a lack of right of access. *Id.* at 553. The purchaser argued that the property could only be accessed by a driveway, but that building such a driveway would require a permit which would have been denied. *Id.* at 563–64. The case was decided in favor of the insurer due to lack of ripeness of the purchaser's claim. *Id.* Nevertheless, in *dicta*, the court noted that because the property was located in a commercial area, it was "beyond reasonable limits to hold that" the insurer and insured "understood that the insurance as to access could be satisfied by pedestrian access." *Id.* at 565. Indeed, the court noted that the "insured must have contemplated insurance protection against lack of vehicular access." *Id.* The court further noted that "when an insurer contracts to insure against lack of access to property, it must be deemed

*of Fla. v. Barrows*, 381 So.2d 1088, 1089–90 (Fla. Dist. Ct. App. 1979) (holding that purchasers still had a legal right of access despite the fact that the platted street connecting their property to the public road was inundated with high tide because the title policy did not insure against "physical infirmities of the platted street"); *Mafetone v. Forest Manor Homes, Inc.*, 34 A.D.2d 566, 567 (N.Y. App. Div. 1970) (holding that failing to notify an owner of land of the difference between the grade of land and the abutting street is not covered under a title insurance policy because standard title policies insure "matters affecting [t]itle to property and do not concern themselves with physical conditions of the abutting property"); *Hocking v. Title Ins. & Trust Co.*, 234 P.2d 625, 626, 629–30 (Cal. 1951) (holding that title and the physical condition of the property and adjacent streets are not the same for purposes of title insurance in finding that the purchaser's claim was not covered by her title insurance policy).

15

to have insured against the absence of access which, given the nature and location of the property, is [r]easonable access under the circumstances." *Id.*

Notably, the *Marriott* decision has been continuously criticized by other jurisdictions which have considered the issue of a lack of right of access. For example, in *Barrows*, the Florida appellate court distinguished *Marriott* and relied on other cases with more consistent holdings because the purchasers had a "legal right of access." *Barrows*, *supra*, 381 So.2d at 1090. Additionally, in *Gates*, the court distinguished the *Marriott* decision as "obiter dicta" and as an outlier which "stand[s] alone." *Gates*, *supra*, 813 S.W.2d at 12. *Riordan* also distinguished its holding from *Marriott* and noted that the "dicta in *Marriott* has been roundly criticized." *Riordan*, *supra*, 393 F. Supp. 2d at 1105. We agree with the majority of jurisdictions that have considered this issue and hold that a lack of right of access provision in a title insurance policy insures only against legal access and does not equate to reasonable access. Accordingly, we hold Chicago Title did not withhold payment of a claim without just cause. The insurer performed the necessary investigation and denied coverage based on the wealth of persuasive case law supporting Chicago Title's determination that the Jen-Shulers' claim was not covered under their title insurance policy.

**B.      Chicago Title's denial of coverage for the Jen-Shulers' claim under the lack of a right access provision was not a violation of Md. Code Ann., Ins. § 27-216(a).**

Section 27-216(a) of the Insurance Article of the Maryland Code provides:

> A person may not willfully collect a premium or charge for insurance if the insurance is not then provided, or is not in due course to be provided subject to an acceptance of the risk by

> the insurer, in a policy issued by an insurer as authorized by this article.

Md. Code (1997, 2017 Repl. Vol.), Ins. § 27-216(a). Thus, if an insurer provides insurance for certain coverage and accepts premiums, yet never provides coverage, the insurer is in violation of § 27-216(a). *Carter v. Huntington Title & Escrow, LLC*, 420 Md. 605, 630–31 (2011). The Jen-Shulers argued below that properties in Baltimore County are no longer permitted to be landlocked. Therefore, they alleged that no coverage would ever be provided under this provision because of Chicago Title's insistence that coverage for a lack of right access would only be provided when a property is landlocked. Chicago Title presented expert testimony through Mr. Nielsen that there are thousands of parcels of land in this country that are landlocked. He further testified that there are many policies "that have been issued assuring a right of access in which that covered risk has been invoked." He claimed that insurers sometimes spend millions of dollars to defend the access right.

The MIA presented testimony from David Thaler, an expert in the field of real estate surveying and land engineering. Mr. Thaler testified that a landlocked property in Baltimore County is rare and that to his knowledge, there is no property "recently created" in Baltimore County that lacks access to a public road. The Commissioner determined that Mr. Nielsen's testimony was more persuasive than the other testimony that was presented and determined that Chicago Title had proven by a preponderance of the evidence that it did not collect a premium and refuse to provide coverage. Agencies are the fact finders and are permitted to weigh the evidence as they deem appropriate. *Cleanwater Linganore, Inc.*, *supra*, 456 Md. at 293–94. We do not substitute our independent judgment as to that

17

determination. *Id.* The Commissioner was entitled to rely on its testimony that he found persuasive. Critically, as the Commissioner found, Chicago Title, and other insurers, had provided coverage and paid claims under this identical provision in other cases. We, therefore, hold that there was substantial evidence presented for the Commissioner to find that while Chicago Title collected premiums under a lack of right of access provision, it did not fail to offer coverage in violation of § 27-216(a).

**II.     The Insurance Commissioner's determination that Chicago Title violated Md. Code Ann., Ins. § 27-303(2) was legally correct and supported by substantial evidence.**

Section 27-303(2) of the Insurance Article of the Maryland Code provides:

> It is an unfair claim settlement practice and a violation of this subtitle for an insurer . . . to refuse to pay a claim for an arbitrary or capricious reason based on all available information.

Md. Code (1997, 2017 Repl. Vol.), Ins. § 27-303(2). Indeed, "an insurer may not arbitrarily or capriciously discard or ignore particular 'information' favorable to the insured when making a claim determination." *Berkshire Life Ins. Co. v. Md. Ins. Admin.*, 142 Md. App. 628, 660 (2002) (internal citations omitted).

Maryland law is well settled that the insurer owes a duty to the insured to defend if there is a potentiality that a claim could be covered by the policy. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08 (1975). The mere potentiality that a pleading might be covered can trigger the duty to defend by the insurer. *Laws. Title Ins. Corp. v. Knopf*, 109 Md. App. 134, 144 (1996). While "an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer," the duty to defend is broader

than the duty to indemnify. *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004); *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 111–12 (1995). Additionally, "[a]n insured may rely on extrinsic evidence where the underlying complaint 'neither conclusively establishes nor negates a potentiality of coverage.'" *Walk*, *supra*, 382 Md. at 16 (quoting *Cochran*, *supra*, 337 Md. at 108). Notably, "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured." *Id.*

Here, the plain language of the Policy provides that "the Company will also pay costs, attorneys' fees and expenses incurred in the defense of this title, as insured, but only to the extent provided in the Conditions and Stipulations." On June 29, 2015, the Jen-Shulers requested reconsideration of coverage from Chicago Title. This request included pleadings, amended pleadings, motions, and a copy of the counterclaim brought by the Bulls in *Jen v. Bull*. Mr. Nielsen testified at the hearing that a counterclaim may create a duty to defend for an insurer. He further testified that once a request to defend is received, the insurer will review the terms of the counterclaim to see if the allegations invoke a covered claim.

Although Chicago Title had already reviewed and denied the Jen-Shulers' request for legal fees in the original lawsuit, once the Bulls' counterclaim was filed, Chicago Title had the duty to further review the counterclaim to see if there was a "potentiality that the claim could be covered by the policy." *Brohawn*, *supra*, 276 Md. at 408. The Bulls'

counterclaim contained two counts: 1) unjust enrichment and 2) defamation *per se*.[10]  The

Bulls claimed in their counterclaim that the Jen-Shulers used the Bulls' driveway without

their permission.  Although the majority of the driveway was on the property of the Bulls,

a small portion of the driveway was also on the Jen-Shulers' property.  Nowhere in the

counterclaim did the Bulls contend that they were bringing a claim against the Jen-Shulers

for using only the portion of the driveway that was on the Bulls' property. Rather, the Bulls

referenced the entire driveway in their counterclaim.[11]  Inasmuch as this counterclaim

could potentially interfere with the Jen-Shulers' use of their own property, there was

substantial evidence to find that the failure to provide a defense under the lack of right of

access provision was arbitrary and capricious and a violation of Ins. § 27-303(2).

**JUDGMENT OF THE CIRCUIT COURT
FOR BALTIMORE COUNTY REVERSED**

---

[10] There is no contention by either party that Count II, defamation *per se*, triggered a duty to defend on the part of Chicago Title.

[11] Chicago Title contends that because the claim was for unjust enrichment there was no threat or challenge by the Bulls to the Jen-Shulers' right to use their land.  We disagree.  The request for reimbursement under a claim of unjust enrichment interferes with a property owner's right to use their own land, because, in this case, the Bulls were seeking reimbursement for expenses for the entire driveway, a portion of which was the Jen-Shulers'.  This claim, if the Bulls prevailed, created a potentiality of coverage because a ruling requiring payment of fees for use of their own driveway would have interfered with the Jen-Shulers' title and right of access. *See Brohawn*, *supra*, 276 Md. at 408.

Chicago Title also contends that the counterclaim is only centered around seeking payment to the Bulls for unjustified use of the Bulls' portion of the driveway.  We disagree.  When mentioning the driveway, the counterclaim does not distinguish between the portion of the driveway owned by the Bulls versus the portion owned by the Jen-Shulers.  Albeit small, a portion of the panhandle driveway used by the Bulls and the Jen-Shulers is owned by the Jen-Shulers.  Therefore, if the Bulls prevailed on their counterclaim, it had the potential to interfere with the Jen-Shulers' use of their own driveway.

20

**AND REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE THE INSURANCE COMMISSIONER'S SEPTEMBER 28, 2017 DECISION; COSTS TO BE PAID TWO-THIRDS BY APPELLEE AND ONE-THIRD BY APPELLANT.**